**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

CHARLES KELLY, individually, and on behalf of all
other similarly situated,

                Plaintiff,

                v.

COMMUNITY BANK, N.A.,

                Defendant.

———————————————————————

Civil Case

No. 8:19-cv-00919-MAD

## DEFENDANT COMMUNITY BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Defendant Community Bank, N.A. respectfully submits this memorandum in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint filed by Plaintiff Charles Kelly ("Plaintiff"). For the reasons stated herein, the Complaint should be dismissed in its entirety because this Court lacks subject matter jurisdiction over Plaintiff's claims and the Complaint fails to state claims as a matter of law.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS ...............................3

    I.      This Action..............................................................................................3

    II.    Debit-Card Transactions .....................................................................4

    III.   Community's Overdraft Protection Program.......................................4

    IV.   Plaintiff's Alleged Injury-in-Fact .......................................................5

ARGUMENT ........................................................................................................6

    I.      The Legal Standards Governing Motions Under Rules 12(b)(1) And 12(b)(6) ...........................................................................................6

    II.    Plaintiff's APPSN Claims Must Be Dismissed Because He Lacks Article III Standing ............................................................................7

    III.   Plaintiff's Breach Of Contract Claim Should Be Dismissed Because Overdraft Fees On APPSN Transactions And Intrabank Transfers Are Expressly Permitted Under The Terms Of The Account Agreement .....................8

          A.    The Parties' Contract Expressly Permits The Assessment Of Overdraft Fees On APPSN Transactions. .....................................9

          B.    The Parties' Agreement Permits Community to Assess Overdraft Fees On Intrabank Transfers ..................................................14

    IV.   Plaintiff Fails To State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing ......................................................................18

    V.    Plaintiff Fails To State A Claim Under The UTPCPL .........................19

    VI.   Plaintiff's Contract, Covenant Of Good Faith, And UTPCPL Claims Are Preempted .......................................................................................20

CONCLUSION....................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrichyn v. TD Bank, N.A.*,
  93 F.Supp.3d 375 (E.D. Pa. 2015) ....................................................................10, 17

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003).......................................................................................7

*Aurecchione v. Schoolman Transp. System, Inc.*,
  426 F.3d 635 (2d Cir. 2005).......................................................................................7

*Bautz v. ARS National Services, Inc.*,
  226 F. Supp. 3d 131 (E.D.N.Y. 2016).......................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................7

*Boone v. MB Fin. Bank, N.A.*,
  No. 18-cv-1771, 2019 WL 1584553 (N.D. Ill. Apr. 12, 2019)...............................13

*Bordoni v. Chase Home Finance LLC*,
  374 F. Supp. 3d 378 (E.D. Pa. 2019) ......................................................................18

*Caren v. Collins*,
  2016 WL 5360875 (N.D.N.Y. 2016) ........................................................................17

*Christopher v. First Mut. Corp.*,
  No. 05–1149, 2006 WL 166566 (E.D. Pa. Jan. 20, 2006) ......................................19

*Cruper-Weinmann v. Paris Baguette America, Inc.*,
  No. 13CV7013-JSR, 2017 WL 398657 (S.D.N.Y. Jan. 30, 2017) ...........................8

*eToll, Inc. v. Elias/Savion Advertising, Inc.*,
  811 A.2d 10 (Pa. Super. Ct. 2002)..........................................................................18

*Gutierrez v. Wells Fargo Bank, N.A.*,
  704 F.3d 712 (9th Cir. 2012) ............................................................................19, 20

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
  1 F.Supp.3d 34 (E.D.N.Y. 2014) ...............................................................................8

*Lambert v. Navy Fed. Credit Union*,
  No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019)...........19

*Lindstrom v. Pennswood Village,*
    612 A.2d 1048, 1051 (Pa. Super. Ct. 1992)............................................................................13

*Luckett v. Bure,*
    290 F.3d 493 (2d Cir. 2002)........................................................................................................7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)....................................................................................................................8

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)....................................................................................................6, 7

*Markocki v. Old Republic Nat'l Title Ins. Co.,*
    Civ. A. No. 06–2422, 2015 WL 3421401 (E.D. Pa. May 27, 2015) ......................................18

*Matusovsky v. Merrill Lynch,*
    186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)...............................................................................3

*Pollock v. Nat'l Football League,*
    No. 1:12cv130, 2013 WL 1102823 (W.D. Pa. Mar. 15, 2013)................................................18

*Seldon v. Home Loan Serv., Inc.,*
    647 F.Supp.2d 451 (E.D. Pa.2009) ..........................................................................................19

*Sherzer v. Homestar Mortg. Servs.,*
    No. 07–5040, 2010 WL 1947042 (E.D. Pa. May 7, 2010) ......................................................19

*Shiffer v. Liberty Mutual Fire Insurance Company,*
    2019 WL 3297513 (M.D. Pa., 2019) .......................................................................................13

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)................................................................................................................8

*Strubel v. Comenity Bank,*
    842 F.3d 181 (2d Cir. 2016)........................................................................................................8

*Waldschmidt v. NVR, Inc.,*
    2018 WL 6433910 (W.D. Pa. 2018) ........................................................................................10

*Werwinski v. Ford Motor Co.,*
    286 F.3d 661 (3d Cir. 2002)......................................................................................................18

*Whittington v. Mobiloil Fed. Credit Union,*
    2017 WL 6988193 (E.D. Tex. Sept. 14, 2017)...................................................................19, 20

*Whittington v. Mobiloil Fed. Credit Union,*
    No. 16-cv-482, 2018 WL 6582824 (E.D. Tex. Oct. 26, 2018)................................................13

**Statutes**

73 P.S. § 201-1, *et seq.*...............................................................................................3, 4, 18, 19

73 P.S. § 201-2(4)(xxi) ...........................................................................................................18

15 U.S.C. 1693 .........................................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1)..............................................................................................2, 6, 7, 10

Fed. R. Civ. P. 12(b)(6)............................................................................................................7

**Regulations**

12 CFR § 1005.17 .................................................................................................................5, 9

## <u>INTRODUCTION</u>

Plaintiff challenges the way Community Bank, N.A., ("Community") assesses Non-Sufficient Funds ("NSF") and overdraft fees. Plaintiff concedes (as he must) that assessing overdraft fees is not legally improper. Instead, he distorts the language of the parties' agreement in an attempt to concoct a breach of contract claim to recoup certain overdraft fees that he now casts as unfair. Because the parties' agreement permits Community to assess the fees in the exact way Plaintiff alleges it does, there is no breach of contract and no violation of Pennsylvania's unfair trade practices act. For that reason and others discussed below, the Court should grant Community's motion to dismiss.

Plaintiff claims that Community breached the parties' customer agreement in two ways. First, he claims that Community breached the contract by assessing overdraft fees on debit-card transactions when there was a sufficient available balance at the time the merchant requested that Community authorize the transaction, but an insufficient available balance when the merchant sent the transaction to Community to be paid—what Plaintiff characterizes without any basis in the law as "Authorize Positive, Purportedly Settle Negative" or "APPSN Transactions." Compl. ¶¶ 14-20, 102. Second, Plaintiff asserts that Community breached the parties' agreement by charging overdraft and NSF fees on "intrabank transfers," which Plaintiff defines as transfers from a customer's checking account to another Community account. *Id.* ¶¶ 61-68, 103.

Plaintiff, however, lacks Article III standing to assert the APPSN claim because Community never assessed Plaintiff an overdraft fee on an APPSN Transaction. While Plaintiff was assessed overdraft fees for several debit-card transactions—only one of which he cited in his Complaint—none of those transactions were authorized, as Plaintiff claims, when Plaintiff had a sufficient available balance to cover the transaction. Because he was never charged an overdraft fee on a transaction that was authorized positive and settled negative, Plaintiff lacks standing to

challenge those transactions. Accordingly, the Court should dismiss his APPSN claim under Rule 12(b)(1) for lack of Article III jurisdiction.

To the extent Plaintiff can establish Article III standing (and he cannot), his APPSN claim also fails because he cannot show, even at the pleading stage, that the language in the parties' contract prohibits APPSN fees. To the contrary, Community's Overdraft Practices Disclosures and Deposit Account Agreement (the "Account Agreement") permit such fees. Specifically, the Overdraft Practices Disclosure provides that overdraft fees are assessed at the time a debit-card transaction is *presented* by a merchant and *paid*, not when it is *authorized*. *See id.*, Ex. 2, at 1. In other words, Plaintiff's available balance at the time of authorization does not matter with respect to overdraft fees; such fees are determined at the time a transaction is presented to Community for payment.

Similarly, Plaintiff cannot state a claim that Community breached the parties' contract by assessing overdraft and NSF fees on intrabank transfers. The Account Agreement expressly permits Community to charge fees on "all banking transactions" that will result in an overdraft; these specifically include telephone bank transfers and online banking transfers. Nothing in the Agreement restricts that right with regard to intrabank transfers or any other transactions. Accordingly, Plaintiff's claim that Community improperly assessed fees when Plaintiff transferred money from his checking account to another Community account fails as a matter of law. This Court should reject Plaintiff's attempts to contrive a contract claim by twisting the language of Community's disclosures.

In addition, because the Account Agreement and Overdraft Disclosure permit the so-called improper practices, Plaintiff's claims for breach of the implied covenant and violation of

the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), PA ST 73

P.S. § 201-1, *et seq.* should likewise be dismissed as a matter of law.

Finally, to the extent Plaintiff's contract or UTPCPL claim rests on the theory that

Community should have disclosed more detailed information regarding its overdraft practices or

that its fee practices were "unfair," his claims are preempted by federal law. *Gutierrez v. Wells*

*Fargo Bank, N.A.*, 704 F.3d 712, 725 (9th Cir. 2012).

## FACTUAL ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS

**I.      This Action**

Plaintiff Kelly is a Pennsylvania citizen and has a checking account with Community.

Compl. ¶ 9.  His account is governed by, among other things, the Account Agreement, Overdraft

Practices Disclosure ("Overdraft Disclosure") and Electronic Fund Transfer Act Disclosure

("EFTA Disclosure"). *Id.*  The Complaint attaches these documents as Exhibits 1, 2 and 3.[1]

Community is a national bank[2] with its home office in St. Lawrence County, New York,

and maintains branches in New York, Pennsylvania, Massachusetts and Vermont. *Id.* ¶ 10.

Plaintiff filed this putative class action against Community on July 27, 2019. He asserts

two claims:  (1) breach of contract and the covenant of good faith and fair dealing (*id.* ¶¶ 100-

08); and (2) violation of the UTPCPL (*id.* ¶¶ 109-20).  Both claims rest on the theory that

Community breached the Account Agreement (1) by assessing overdraft fees on debit card

---

[1]      Because these documents are attached as exhibits to the Complaint, the Court may properly consider them on a motion to dismiss. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (On a motion to dismiss, "a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.").

[2]      While the Complaint often refers to Community as a credit union, this seems to be a direct result of the type of cookie-cutter, cut-and-paste allegations that have been made against the Bank, without regard for the operative terms of the agreement and the ultimate merits of the claims.  It is public record that Community is in fact a national bank, not a credit union.

transactions that were authorized when a customer's available balance was positive but settled when his available balance was negative, *i.e.*, APPSN Transactions (*id.* ¶¶ 14-20, 102); and (2) by charging overdraft and NSF fees on "intrabank transfers," which Plaintiff defines as transfers made by a customer from a customer's checking account to another Community account or to Community itself (*id.* ¶¶ 61-68, 103).   Notably, however, the Complaint is devoid of any allegations that Plaintiff made payments to Community that resulted in overdraft fees.

## II.    Debit-Card Transactions

Pursuant to the Account Agreement and EFTA Disclosure, Community provides its customers with a debit card to make purchases from merchants. *Id.* ¶ 12. For signature-based debit-card transactions (in contrast to PIN number transactions), merchants typically request authorization from the bank when the card is swiped or entered at the point of sale. *Id.* ¶¶ 26-27. When Community authorizes a debit-card, signature-based transaction, it places a "debit hold" on the customer's available balance for the anticipated amount of the transaction (which often changes, *i.e.,* a bill at a restaurant), thereby decreasing the available balance and the money available to pay for transactions. *Id*. ¶ 27. The hold is released when the transaction is presented for payment through the merchant's payment network up to several days later. *Id*. ¶¶ 28-29. If Community authorized the transaction, then it is obligated to pay, even if there are insufficient available funds when the transaction is eventually presented for payment and paid. *Id*. ¶ 30. Nonetheless, overdraft fees may be incurred pursuant to Community's clear and unambiguous Overdraft Disclosures.

## III.    Community's Overdraft Protection Program

Community provides an overdraft protection program that enables it to "authorize and pay certain overdraft items when [a customer] do[es] not have sufficient available funds in [their]

account." *Id.*, Ex. 1, at 2. Community's standard "Overdraft Protection Program" applies to all customer accounts unless customers instruct otherwise. *Id.*, Ex. 2 at 1-3. Pursuant to this program, Community may cover (and impose a fee on) "all banking transactions that may result in an overdraft." *Id.* at 2. Community assesses overdraft fees on transactions, including debit-card transactions, when they are presented for payment by merchants and paid and posted to a customer's account, *not when they are authorized. Id.* at 1 ("wherein for a fee, and subject to certain limitations, we may cover certain items *presented for payment* even though you do not have sufficient available funds in your account") (emphasis added); *see also id.*, Ex. 3, at 1 (stating that Community may impose overdraft fees on any debit-card transaction that it is "unable to *process*") (emphasis added).

The only transactions that are not automatically covered by Community's automated overdraft program are those governed by Regulation E of the Electronic Fund Transfer Act (12 CFR §§ 1005.17 *et seq.*). That regulation requires that consumers "opt in" to a bank's standard overdraft protection programs for one-time or non-recurring debit card transactions. 12 CFR § 1005.17(d). In order to have Community "authorize and pay overdrafts on ATM and everyday debit card transactions," customers must affirmatively opt in by signing Community's opt-in form. Compl., Ex. 3, at 3-4.; *see also id.* at 4 (The Bank "do[es] not authorize and pay overdrafts for [ATM transactions and everyday debit card transactions] unless you ask us to.").   Plaintiff has not opted-in for one-time or non-recurring debit card transactions. Declaration of Christina Sullivan ("Sullivan") Decl. ¶ 3.

## IV.    Plaintiff's Alleged Injury-in-Fact

Plaintiff alleges only one example of an APPSN transaction.  It occurred on June 3, 2019 for a recurring debit-card payment to DIRECTV.  He claims that on June 3, 2019, he was

assessed a $35 overdraft fee for a recurring DIRECTV debit-card transaction purportedly authorized on a positive available balance and settled on a negative available balance. Compl. ¶ 60. That transaction, however was not an APPSN transaction; it was authorized and settled when Plaintiff's available balance was insufficient to cover it. *See* Sullivan Decl. ¶ 5.

Plaintiff also alleges that Community improperly charged him $35 overdraft fees when he, himself, initiated and made transfers from his checking account to his savings account with Community on March 11, 2019 and May 28, 2019. Compl. ¶ 63.  As detailed below, Plaintiff's claims are plainly without merit and an apparent attempt to deflect responsibility for his own financial decisions.

## ARGUMENT

### I.     The Legal Standards Governing Motions Under Rules 12(b)(1) And 12(b)(6)

"When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it 'must accept as true all material factual allegations in the complaint, but [it is] *not to draw inferences* from the complaint favorable to plaintiffs.'" *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 136 (E.D.N.Y. 2016) (emphasis added) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); *accord Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). Indeed, "'[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "plausibly" state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must be sufficient to raise this possibility of relief above the "speculative level." *Id*. Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id*. at 558.

## II.     Plaintiff's APPSN Claims Must Be Dismissed Because He Lacks Article III Standing

Plaintiff's claims fail on the merits for many reasons.  But before the Court addresses those reasons, it should determine whether Plaintiff has Article III standing to assert his claims. As to his APPSN claims, Plaintiff does not have standing because he has not alleged—and cannot allege—a single APPSN Transaction that resulted in an overdraft fee.

To satisfy the "irreducible constitutional minimum of Article III standing," a plaintiff must be able to demonstrate: "(1) an injury in fact; (2) a causal connection between that injury and the complained-of conduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Strubel v. Comenity Bank*, 842 F.3d 181, 187-88 (2d Cir. 2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)). "These rules are no less true for plaintiffs representing putative classes." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014). Indeed, "'[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id*. (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012)).

The Supreme Court has recognized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

(2016). "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560; *see also Cruper-Weinmann v. Paris Baguette Am., Inc.*, No. 13-7013-JSR, 2017 WL 398657, at *1 (S.D.N.Y. Jan. 30, 2017) ("To bring any lawsuit, a plaintiff must have constitutional 'standing' to do so . . . .").

To the extent Plaintiff's claims are based on overdraft fees imposed on APPSN Transactions, they must be dismissed because Plaintiff was never charged a fee on an APPSN Transaction.  The Complaint alleges only one purported APPSN Transaction for which Plaintiff was allegedly charged an improper overdraft fee. Compl. ¶ 60. That transaction, however, was a recurring DIRECTV payment that was both authorized *and* presented and paid on a negative or insufficient balance. *See* Sullivan Decl. ¶ 5.  Accordingly, it does not fall within the APPSN construct created by Plaintiff and upon which he bases his breach of contract claim.  While Plaintiff also incurred overdraft fees on a few other recurring debit-card transactions through the life of his accounts, none of those transactions were authorized positive; they were all authorized negative and presented and paid with an insufficient balance. *Id*. ¶ 7.

Because Plaintiff has *never* suffered an injury-in-fact as the result of any so-called APPSN Transaction, he lacks an Article III injury-in-fact that is fairly traceable to his alleged breach of contract, covenant of good faith and consumer protection claims based on his APPSN Transaction theory.  Accordingly, those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## III.   Plaintiff's Breach Of Contract Claim Should Be Dismissed Because Overdraft Fees On APPSN Transactions And Intrabank Transfers Are Expressly Permitted Under The Terms Of The Account Agreement

Even if Plaintiff has standing (which he does not), Plaintiff has not and cannot plausibly state a claim for breach of contract.  The elements for breach of contract under Pennsylvania law

are: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'"[3] *Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 382 (E.D. Pa. 2015). "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Waldschmidt v. NVR, Inc.*, 2018 WL 6433910, at *3-*4 (W.D. Pa. Dec. 7, 2018) (dismissing contract claim as a matter of law where plaintiff's interpretation was contrary to the "plain language" of the contract); *State v. United Parcel Service, Inc.*, 253 F. Supp. 3d 583, 658 (S.D.N.Y. 2017) ("[w]hen an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms") (citations omitted).

Plaintiff alleges that Community breached the parties' contract by assessing overdraft fees on APPSN Transactions and intrabank transfers. As explained next, Plaintiff's contract claims fail because the Account Agreement expressly permits those fees.

   A.    *The Parties' Contract Expressly Permits The Assessment Of Overdraft Fees On APPSN Transactions.*

Plaintiff alleges that Community breached the parties' contract by assessing overdraft fees on APPSN Transactions because those transactions did not overdraw the available balance of a customer's account *at the time of authorization* (even though they did at the time of payment). Compl. ¶¶ 37-40. That claim fails as a matter of law because the contract provides that overdrafts are assessed based on a customer's available balance at the time transactions are *presented* and *paid*, not when they are *authorized*.

Specifically, the parties' agreement states that Community offers "Overdraft Protection Programs to our customers, wherein for a fee, and subject to certain limitations, we may cover certain items *presented for payment* even though you do not have sufficient available funds in

---

[3] For purposes of this motion only, Community uses Pennsylvania state law given that contract law does not substantively differ between Pennsylvania and New York. *See, e.g.*, *Maniolos v. U.S.*, 741 F. Supp. 2d 555, 566 (S.D.N.Y. 2010), *aff'd*, 469 Fed. Appx. 56 (2d Cir. 2012)

your account." *Id.*, Ex. 2, at 1 (emphasis added); *see also id*. ("Under both the [bank's] Overdraft

Protection Programs," the bank is "not obligated to cover any item *presented for payment* if your

account does not contain sufficient funds.") (emphasis added); *id*. at 2 ("We will charge you a

fee of $35 each time we *pay* an overdraft, return an item due to insufficient funds (NSF)*, or *pay*

an item based on unavailable funds.") (emphasis added); *id*. at 4 ("Under our standard overdraft

practices: "We will charge you a fee of $32 each time we *pay* a non-sufficient* or overdraft*

item.") (emphasis added). Similarly, the EFTA Disclosure explains that Community may impose

overdraft fees on any debit-card transaction that it is "unable to *process*." *Id.*, Ex. 3, at 1

(emphasis added). Accordingly, the parties' agreement explicitly states that an overdraft fee will

be assessed when a transaction is "presented for payment" and paid with an insufficient available

balance.

Consistent with the plain language of the parties agreements, Plaintiff was rightfully

assessed overdraft fees based on transactions that he initiated and now complains of (*i.e*., the

May 31, 2019 DIRECTV debit card payment) and which were presented for payment against

insufficient funds.  Indeed, while Plaintiff has made painstaking efforts to parse and contort the

language in the parties' contract to push this contrived APPSN Transaction theory, it amounts to

nothing more than a transaction which is paid with an insufficient (what Plaintiff calls

"negative") available balance. Because Plaintiff's theory contravenes the plain language of the

contract, there was no breach.  *See Boone v. MB Fin. Bank, N.A.*, No. 18-cv-1771, 2019 WL

1584553, at *4-5 (N.D. Ill. Apr. 12, 2019) ("[T]he Checking Agreements unambiguously provide

that an OD occurs when MB Financial *pays*, and not merely authorizes, an amount in excess of

Boone's available balance. Therefore, we find that the Checking Agreements unambiguously

support MB Financial's interpretation.") (emphasis added); *Whittington v. Mobiloil Fed. Credit*

*Union*, No. 16-cv-482, 2018 WL 6582824, at *7 (E.D. Tex. Oct. 26, 2018) (holding that plaintiff's APPSN claim was negated by "[t]he express language of the [contract] – 'an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline'").

None of Plaintiff's arguments can overcome the plain language of the parties' contract. Plaintiff repeatedly insists that because Community places a debit hold on customer's accounts until transactions are presented for payment, "customers' accounts will always have sufficient available funds available to cover [APPSN] transactions." Compl. ¶ 15; *see also id.* ¶ 37 ( "For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to 'cover' those transactions."); *id.* ¶ 53 ("the assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions" because "if funds are immediately debited, they cannot be depleted by intervening transactions").

Plaintiff's theory is unavailing. *First*, just as in *Boone*, above, Community does not make any promises to process debit-card transactions differently by "sequestering" funds[4] and applying them to pay transactions at a later date:

> Boone claims that there are always funds available to "cover" a
> APPSN transaction because the bank "sequesters" the funds when it
> approves the debit transaction.  However, MB Financial correctly
> guides us to the Contract's out-of-order payments provision, which
> states that the bank will pay transactions in a given order and warns
> customers that "[t]he order in which items are paid is important if there
> is not enough money in your account to pay all of the items that are
> presented."  The provision, as MB Financial correctly points out, does
> not suggest that the Bank will use a different payment order or method

---

[4] Notably, Plaintiff did not even have sufficient funds to purportedly "sequester" as all of Plaintiff's debit-card transactions that resulted in an overdraft fee were authorized when Plaintiff's available balance was insufficient to cover the transaction.

> only for debit card transactions by "sequestering" funds at the time of
> authorization and then applying the funds at settlement regardless of
> the intervening changes to the account balance.

*Boone*, 375 F. Supp. 3d at 993.   Just like MB Financial, Community has nearly identical

provisions explaining the posting order of transactions and that "the order in which transactions

are processed, as set forth in our Overdraft Practices, can affect the total amount of fees

incurred."  Compl., Ex. 1 at 3.  Nor does the Community Account Agreement "suggest" in any

way that Community will use a different payment order or method for debit cards by using

"sequestered" funds.

 *Second*, it is incontrovertible and a matter of basic banking that even though an account

has sufficient funds when a transaction is authorized (which Plaintiff's account did not), that

does not mean that will be the case when the transaction is presented for payment. To the

contrary, a debit hold placed upon authorization does *not* mean there will be a sufficient

available balance to cover a transaction when it is paid because while a transaction is on "hold,"

any number of intervening transactions may occur that deplete the customer's available balance

well into negative territory (not at all different from what happens when one writes a check and

notes it in his check register, but an unanticipated transaction is paid before the check is paid).

Additionally, as often occurs at restaurants (and other merchants, such as gas stations), the

authorized amount is often less than the amount ultimately presented for payment, such as when

tips are added.  Just like when writing a check, it is the customer's responsibility to ensure that

there is sufficient available funds when the transaction is presented for payment.  *Id.*, Ex. 3, at 1

("you agree to maintain sufficient collected funds in your account to cover any electronic

withdrawals or payments").  Accordingly, the mere fact that Community places a hold on funds

when it authorizes one pending debit-card transaction does not mean the customer will have

sufficient funds to pay for the transaction at the time it and other transactions are presented for

payment for processing.  Because the latter time (*i.e.*, when presented for payment) is the operative point in the process identified in the parties agreement, Community is fully within its rights to assess overdraft fees on the APPSN Transactions with which Plaintiff has taken issue.

Plaintiff also mistakenly relies on the language that "the Bank may, at its discretion *authorize and pay* certain overdraft items." Compl. ¶ 34 (emphasis added). According to Plaintiff's strained interpretation, Community "decides whether to 'authorize and pay' a debit card transaction at the moment of authorization" "because banks are required to pay debit card charges once they are authorized." *Id*. ¶¶ 30, 36. But the fact that Community is required by law to pay a charge it has authorized does not change the timing of the assessment of overdraft fees set forth in the Account Agreement. In other words, the fact that Community must pay a charge at settlement does not preclude it from charging an overdraft fee in accordance with its contractual rights if the transaction exceeds the available balance at the time of payment. Correspondingly, the fact that a charge exceeds the available balance in a customer's account at *authorization* does not mean Community will in fact charge an overdraft fee at the time of settlement if the account has been replenished to a positive balance (and in fact Community does not do so). In all cases, the relevant time for determining whether to impose an overdraft fee is the time of settlement as provided for in the Account Agreement and disclosures.

Finally, Plaintiff's interpretation of the parties' contract would require Community to treat signature debit-card transactions different from all other payment transactions (such as PIN debit-card transactions, checks, and ACH payments), which are all assessed at the time the transaction is presented and actually paid.  Plaintiff asks this Court to read into the parties' contract a different requirement for debit-card signature transactions, meaning that overdrafts are assessed at the time of authorization rather than payment. The Court should decline Plaintiff's

invitation to in effect rewrite the parties' agreement. *Lindstrom v. Pennswood Village*, 612 A.2d 1048, 1051 (Pa. Super. Ct. 1992) ("This Court will not rewrite the contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words used."); *see also  Flack v. Friends of Queen Catherine Inc.*, 139 F. Supp. 2d 526, 536 (S.D.N.Y. 2001) ("Where a contractual term is clear and unambiguous, a court may neither rewrite the term under the guise of interpretation nor redraft the contract to accord with its instinct for the dispensation of equity upon the facts of a given case") (internal quotation marks and citations omitted); *Shiffer v. Liberty Mut. Fire Ins. Co.*, 2019 WL 3297513, at *17 (M.D. Pa. July 22, 2019).

Because the parties' agreement expressly permits Community to assess overdraft fees on APPSN Transactions, Plaintiff's breach-of-contract claim based on his APPSN theory should be dismissed as a matter of law.

> **B.** **The Parties' Agreement Permits Community to Assess Overdraft Fees On Intrabank Transfers**

Like his APPSN theory, Plaintiff has not and cannot plausibly assert a breach of contract claim based on intrabank transfers. Plaintiff alleges that Community breached the parties' agreement by assessing overdraft and NSF fees on what he calls "intrabank transfers," which he defines as transfers customers make from their checking account to another Community account (like a savings account) or to pay off a debt owed to Community. Compl. ¶ 61; *see also id.* ¶ 63 (claiming that Community improperly charged him overdraft fees on March 11, 2019 and May 18, 2019 on transfers he made from his checking account to his savings account).[5] According to Plaintiff, this practice constitutes a breach because "there is no contractual basis which permits

---

[5] Notably, Plaintiff does not allege any instance in which he was charged a fee for paying off a debt owed to Community.

Community to attempt to pay itself from an account that has insufficient funds to do so." *Id.* ¶¶ 64-65.

Once again, Plaintiff's interpretation of the contract is directly contrary to its express language. The Overdraft Disclosure explicitly informs customers that "[a]n overdraft occurs when you do not have enough money in your account to cover a *transaction*, but we cover the *transaction* on your behalf." *Id.*, Ex. 2, at 1. If a customer (like Plaintiff) is enrolled in Community's overdraft protection program, the bank has the right to pay (and impose an overdraft fee on) "*all* banking transactions" that will result in an overdraft. *Id.* at 2 (emphasis added); *id.*, Ex. 2, at 2 ("Covered Transactions" under the bank's overdraft program include "*all banking transactions* that may result in an overdraft") (emphasis added). Indeed, Community's Overdraft Disclosure expressly defines "banking transactions" to include "telephone bank transfers" and "online banking transactions" (the transfers in this case were performed online). (*id.*; *see also id.*, Ex. 3 at 1 ("You may use your Card and PIN for the following *transactions . . . Fund Transfers Between Accounts.*") (emphasis added). Because a request to transfer funds from a checking account to another account (or to make a payment to Community itself) is undeniably a "banking transaction," Community is clearly within its rights to impose overdraft fees on such transactions.

Similarly, Community has a right to subject such transactions to NSF fees if it decided to reject the transactions rather than cover them. *See id.*, Ex. 1, at 3 (providing that if the bank "do[es] not pay an overdraft, your transaction will generally be returned or declined and certain fees may still apply"); *id.*, Ex. 2, at 1 ("If we do not authorize and cover an overdraft, your transaction will generally be returned or declined and certain fees may still apply."); *id.* at 2 (stating that a NSF fee will be imposed for transactions declined as a result of non-sufficient

funds). Importantly, nowhere does the parties' contract make any exception to overdraft or NSF

fees for what Plaintiff calls "intrabank transfers;" in fact, they are defined as transactions subject

to fees in the EFTA Disclosure.  *Id.*, Ex. 3, at 1. Indeed, the only exception set forth in the

contract concerns ATM withdrawals and non-recurring transactions. *See id*., Ex. 2 at 4 (expressly

informing customers that Community will not provide overdraft coverage for those transactions

"unless you ask us to").

     In support of his position, Plaintiff ignores, as he must, the plain language in the

Overdraft Disclosure and instead cites an isolated provision in an irrelevant disclosure (the

bank's EFTA Disclosure):

> FAILURE TO COMPLETE AN ELECTRONIC FUND TRANSFER. The Bank
> will make every effort to assure that your deposits, transfers and withdrawals are
> made quickly and correctly. If you request that we automatically transfer funds on
> a specific date, we will make one attempt to electronically transfer the funds on
> that date. *If sufficient funds are not available,* the transfer will not be completed.

*Id.* ¶ 67 (citing Ex. 3, at 4 (emphasis Plaintiff's)). Plaintiff claims that "[n]o reasonable consumer

reading that would expect an OD Fee or NSF Fee to be charged, as that is not mentioned as a

possible outcome of an attempted intrabank transfer." *Id.*

     Plaintiff's reliance is misplaced. The Electronic Fund Transfer Act (EFTA) is a federal

law that protects consumers when they transfer funds electronically; including the use of debit

cards, automated teller machines (ATMs), and automatic withdrawals from a bank account.

Among other protections, the EFTA provides a way to correct transaction errors and limits the

liability resulting from a lost or stolen card.  The EFTA does not in any way govern overdrafts or

overdraft fees.

     Contrary to Plaintiff's suggestion, the foregoing paragraph does not relate solely to

intrabank transfers, but rather to all "electronic fund transfer[s]," which includes debit cards,

ATMs, ACHs and other attempted electronic transfers. *Id.*, Ex. 3, at 4.  What is more, the

paragraph merely informs customers that, with respect to electronic fund transfers, if a customer requests that the bank "automatically transfer funds on a specific date," the bank will "make one attempt" to transfer the funds on that date and if "sufficient funds are not available the transfer will not be completed." The paragraph has nothing to do with whether the bank may or will provide overdraft coverage or assess an NSF fee if the transfer is declined. To the extent the EFTA Disclosure has any relevance at all, it clearly provides that the customer is personally responsible for all charges incurred, including overdrafts. *Id.* at 1.  Notably, the document that directly speaks to overdraft coverage and the assessment of fees (the Overdraft Disclosure) plainly provides that intrabank transfers are covered by the Bank's overdraft protection program and subject to applicable fees.  Indeed, if Plaintiff's reading were accepted, the EFTA Disclosure provision cited by Plaintiff would prohibit overdraft fees on all electronic bank transfers, including debit cards. That is clearly not the case. *See id*. at 1 (explaining that Community may impose a fee on any electronic fund transfer that it is "unable to process" – including an "overdraft" fee). Because Plaintiff's reading of the contract is contrary to the plain language of the parties' agreement, his contract claim fails as a matter of law.

Finally, Plaintiff argues that Community "should" decline intrabank transfers that would overdraw a customer's checking account because the bank has the contractual discretion to do so. *See id.* ¶ 80 (relying on the statement in the Overdraft Disclosure that the bank "in its sole and absolute discretion can cease covering overdrafts at any time"). However, Plaintiff does not and cannot point to any provision requiring that the Bank exercise such discretion relative to intrabank transfers or any other transactions. The fact that Community has the right to "cease covering overdrafts at any time" does not mean that it is required to refuse coverage of overdrafts caused by intrabank transfers. Contrary to Plaintiff's suggestion, it is completely unreasonable to

expect the Bank to oversee and exercise some sort of veto power over transactions initiated by its thousands of customers. Indeed, there may be real reasons why a customer may want the bank to extend overdraft coverage for an intrabank transfer (for example, to avoid penalties like late payments on lines of credit or mortgage debts or to meet a minimum balance requirement of a savings account). Likewise, there is no practical reason that the Bank should treat payments to Community, say for its line of credit, any different than a payment to another institution. Importantly, it is the customer's responsibility to protect themselves against overdraft fees on intrabank transfers by keeping track of their own transactions. *Id.*, Ex. 3, at 1 ("you agree to maintain sufficient collected funds in your account to cover any electronic withdrawals or payments").

Because Plaintiff's available balance in his checking account was insufficient when he, himself, directed a transfer of funds to his savings account, Community was entitled to charge an overdraft fee and Community did not breach the Account Agreement as a matter of law.

## IV.   Plaintiff Fails To State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing

"[A] breach of the covenant of good faith and fair dealing *is a breach of contract action*, not an independent action for breach of a duty of good faith. *Caren v. Collins*, 2016 WL 5360875, at *9 (N.D.N.Y. Sept. 23, 2016) (applying Pennsylvania law) (citations omitted) (emphasis added). To establish a claim, a plaintiff must allege that defendant "breach[ed] a specific duty imposed by the contract other than the covenant of good faith and fair dealing." *Id*. (citing *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009)) *Caren*, 2016 WL 5360875, at *9 (the covenant "attaches to existing contractual obligations; it does not add new contractual duties") (citations omitted).

Plaintiff has not met this requisite legal standard. The substance of his breach of covenant claim mirrors his breach of contract claim; that is, Plaintiff alleges that Community breached the covenant by assessing overdraft fees on APPSN Transactions and on intrabank transfers. Compl. ¶ 106. Because the parties' contract plainly permits such fees, Plaintiff does not and cannot state a claim for breach of the covenant of good faith and fair dealing. *See Andrichyn*, 93 F. Supp. 3d at 384-87 (dismissing breach of contract and good faith and fair dealing claims where plaintiff failed to identify a specific contractual duty breached by defendant; the implied covenant cannot be used "to create an obligation that the parties did not agree to"); *Caren*, 2016 WL 5360875, at *9.

## V.      Plaintiff Fails To State A Claim Under The UTPCPL

Plaintiff's UTPCPL claim is fatally deficient as well. He contends Community engaged in "unfair or deceptive acts or practices" in violation of the UTPCPL by assessing overdraft fees on APPSN Transactions and intrabank transfers. Compl. ¶ 111. Plaintiff brings his UTPCPL claim under the "catch all" provision of the UTPCPL. *Id*. ¶ 113; *see* 73 Pa. Stat. Ann. § 201-2(4)(xxi) (prohibiting "any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding"). Plaintiff's UTPCPL claim fails for several independent reasons.

First, because Plaintiff's claim is predicated on Community's alleged breach of contract, it is barred by the "gist of the action" rule, which precludes Plaintiff from recasting ordinary breach of contract claims into tort or UTPCPL claims. *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002); *Pollock v. Nat'l Football League*, No. 1:12cv130, 2013 WL 1102823, at *4, *6 (W.D. Pa. Mar. 15, 2013).  The Court should dismiss it for this reason alone.

Second, the UTPCPL claim is barred by the "economic loss rule," which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (citation omitted); *Pollock*, 2013 WL 1102823, at *6-*7; *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 384–86 (E.D. Pa. 2019) (concluding that courts should still follow *Werwinski* notwithstanding a few lower state court cases to the contrary). Because Plaintiff's claim is based entirely on economic losses purportedly resulting from the parties' contract, it fails as a matter of law.

Third, Plaintiff does not and cannot show that Community "made a misrepresentation or engaged in conduct likely to deceive" in violation of the UTPCPL catch-all provision. *Markocki v. Old Republic Nat'l Title Ins. Co.*, Civ. A. No. 06–2422, 2015 WL 3421401, at *4 (E.D. Pa. May 27, 2015). "Deception . . . is defined as intentional misleading by falsehood spoken or acted." *Christopher v. First Mut. Corp.*, No. 05–1149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006) (internal quotation marks and citation omitted); *accord Sherzer v. Homestar Mortg. Servs.*, No. 07–5040, 2010 WL 1947042, at *7 (E.D. Pa. May 7, 2010), report and recommendation adopted as modified, No. 07–5040, 2010 WL 2649852 (E.D. Pa. July 1, 2010); *see also Seldon v. Home Loan Serv., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa.2009). The Complaint does not plausibly allege that Community made any misrepresentation or engaged in any "spoken or acted" falsehood, let alone that it did so with the requisite intent. Rather, Plaintiff's claims are based on a strained interpretation of the parties' contract in an effort to push a contrived theory of recovery. Accordingly, Plaintiff has failed to state a claim against Community under the UTPCPL.

## VI.  Plaintiff's Contract, Covenant Of Good Faith, And UTPCPL Claims Are Preempted

Finally, to the extent that Plaintiff is claiming that Community—a national bank—should

be held liable for failing to adequately disclose its overdraft practices or because the practices are "unfair," his claims should be rejected as a matter of law.

"The requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted." *Gutierrez*, 704 F.3d at 725. In this case, Plaintiff's contract, covenant of good faith and UTPCPL claims boil down to an attack on the sufficiency of Community's contract disclosures. *See, e.g.,* Compl. ¶ 40 ("No express language in any document states that Community may impose OD Fees on any APPSN Transactions."); *id.* ¶ 85 ("Neither the Deposit Agreement nor any other account document ever states that transfers to other Community accounts incur NSF or OD Fees."). As such, those claims are preempted by federal law. *See Gutierrez*, 704 F.3d at 725 (state law claims regarding a national bank's failure to disclose certain overdraft fee practices were preempted); *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019) (state law claims purporting to dictate credit union overdraft disclosures were preempted by federal law); *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *11 (E.D. Tex. Sept. 14, 2017) (concluding that plaintiff's fraud claims were "preempted by TISA to the extent they are rooted in [the credit union's] alleged failure to disclose certain information governed by TISA's disclosure requirements").

To the extent Plaintiff is asserting that Community's overdraft practices are "unfair," those claims are also preempted by federal banking law. *See Gutierrez*, 704 F.3d at 725-26 (concluding that the National Banking Act preempted state law consumer protection claims for "unfair" or "unconscionable" practices by banks); *Lambert*, 2019 WL 3843064 at *3 ("To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or *the fairness of the [NSF] fee practice itself* . . . those arguments are clearly

preempted.") (emphasis added); *Whittington*, 2017 WL 6988193 at *9 (holding plaintiff's deceptive trade practices claims preempted as a "de facto regulation of the activities outlined in [federal banking law]").

## **CONCLUSION**

For the foregoing reasons, Community respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: November 15, 2019          Respectfully Submitted,

KATTEN MUCHIN ROSENMAN LLP

By:  /s/  Stuart M. Richter
Stuart M. Richter (*pro hac vice*)
stuart.richter@katten.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Ph.: (310) 788-4400
Fax: (310) 788-4471

Andrew J. Demko (*pro hac vice*)
andrew.demko@katten.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Ph.: (310) 788-4400
Fax: (310) 788-4471

Jonathan B. Fellows
Bond Schoeneck & King, PLLC - Syracuse
One Lincoln Center
Syracuse, NY 13202
315-218-8000
Fax: 315-218-8100
Email: FellowJ@bsk.com

*Attorneys for Defendant*
*Community Bank, N.A.*