**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHARLES KELLY,** *on behalf of*
*himself and all others similarly*
*situated,*

                                        **Plaintiff,**

        **vs.**                                                **8:19-CV-919**
                                                                **(MAD/CFH)**

**COMMUNITY BANK, N.A.,**

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**KOPELOWITZ OSTROW**                         **DANIEL TROPIN, ESQ.**
**FERGUSON WEISLBERG GILBERT**                **JEFFREY M. OSTROW, ESQ.**
One West Las Olas Boulevard                   **JONATHAN M. STREISFELD, I, ESQ.**
Suite 500
Fort Lauderdale, Florida 33301
Attorneys for Plaintiff

**DREYER BOYAJIAN LAMARCHE**                  **JAMES R. PELUSO, JR., ESQ.**
**SAFRANKO**
75 Columbia Street
Albany, New York 12210
Attorneys for Plaintiff

**KALIEL PLLC**                               **JEFFREY D. KALIEL, ESQ.**
1875 Connecticut Ave NW                       **SOPHIA GOREN GOLD, ESQ.**
10th Floor
Washington, D.C. 20009
Attorneys for Plaintiff

**KATTEN, MUNCHIN LAW FIRM**                  **STUART M. RICHTER, ESQ.**
2029 Century Park East                        **ANDREW J. DEMKO, ESQ.**
Suite 2600
Los Angeles, California 90067
Attorneys for Defendant

**BOND SCHOENECK & KING,**                    **JONATHAN B. FELLOWS, ESQ.**
**PLLC – SYRACUSE**
One Lincoln Center

Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff, Charles Kelly ("Plaintiff"), an account-holder at Community Bank, commenced this putative class action on July 26, 2019, alleging multiple causes of action stemming from Community Bank's policy and practice regarding the assessment of overdraft fees and insufficient funds fees (collectively referred to as "overdraft fees"). *See* Dkt. No. 1 at 21-22. On November 11, 2019, Defendant Community Bank, N.A. ("Defendant" or "the Bank"), filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 35. Plaintiff opposed Defendant's motion to dismiss and filed a cross-motion to amend his complaint, submitting a proposed amended complaint in support of his motion. *See* Dkt. No. 39. Presently before the Court is Defendant's motion to dismiss the complaint in its entirety and Plaintiff's cross-motion to amend his complaint. *See* Dkt. Nos. 35, 39.

## II. BACKGROUND

In his original complaint, Plaintiff alleged two causes of action: (1) breach of contract and breach of the covenant of good faith and fair dealing, and (2) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"). *See* Dkt. No. 1 at 21-22. Plaintiff seeks to amend the complaint to include two additional named plaintiffs, Tina Thompson ("Ms. Thompson") and Scott Doxey ("Mr. Doxey"), include allegations regarding overdraft fees on so-called "phantom transactions," bring a claim under the New York General Business Law, and add a class and subclass. *See* Dkt. No. 39-1. Both Plaintiff Kelly and the proposed Plaintiffs

allege that they hold accounts with the Bank which are governed by the Account Agreement, Overdraft Practices Disclosure, and Electronic Fund Transfer Act Disclosure.[1] *See* Dkt. No. 39-1 at ¶¶ 9-11; Dkt. No. 39-2. The claims in the proposed amended complaint are based on the theory that Defendant breached the Account Agreements by (1) assessing overdraft fees on debit card transactions that were authorized when the account holder's balance was positive but settled when the available balance was negative ("APPSN transactions"), (2) assessing overdraft fees on transfers from one account with the Bank to another ("intrabank transfers"), and (3) assessing overdraft fees on micro-deposit verification transactions, or so-called "phantom transactions." *See* Dkt. No. 39-1 at ¶¶ 14-22, 62-64, 65-72, 92-101. Plaintiff alleges that the language of the Account Agreements clearly states that Defendant will only charge overdraft fees when the account does not contain sufficient funds to cover the transaction, and that Defendant will not assess overdraft fees on intrabank transfers or phantom transactions. *See id.* at ¶ 3. Thus, Plaintiff argues that Defendant's imposition of overdraft fees, as alleged in the proposed amended complaint, violates the Account Agreements. *Id.* at ¶¶ 3-4.

Defendant argues that Plaintiff's complaint should be dismissed in its entirety for lack of standing and for failure to state a claim. *See* Dkt. No. 35-1. Specifically, Defendant argues that Plaintiff lacks the standing to assert the APPSN claim because he was never charged an overdraft fee for an APPSN transaction. *See* Dkt. No. 35-1 at 6. In the alternative, Defendant asserts that overdraft fees are assessed at the time the transaction is presented by the merchant for payment by the Bank, not when the transaction is initially authorized. *Id.* Defendant argues that the Account

---

[1] Each of these documents were attached as exhibits to the complaint and have been considered by the Court. *See Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that in considering a motion to dismiss, the court may consider documents attached as exhibits to the complaint).

Agreement provides for the imposition of overdraft fees in situations where the account balance is insufficient at the time of settlement. With respect to the other claims, Defendant argues that the provisions of the contract provides for the assessment of fees on intrabank transfers and phantom transactions. *Id.* at 7-8. Thus, Defendant argues, the imposition of the fees as alleged was consistent with the terms of the account agreement. *See id.* at 7-8.

### III. DISCUSSION

A.     **Legal Standard**

According to Rule 15 of the Federal Rules of Civil Procedure, when unable to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave will only be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id*. at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id*. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id*. at 570.

## B.     Motion to Amend[2]

---

[2] Since an analysis of Defendant's motion to dismiss is intertwined with an analysis of

(continued...)

### 1. Undue Delay

In general, "permission to amend should be freely granted." *Cresswell v. Sullivan &
Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citing *Foman*, 371 U.S. at 182).  However, courts may
deny a party's motion for leave to amend a pleading "where the motion is made after an inordinate
delay."  *Id.*  "When a considerable period of time has passed between the filing of the complaint
and the motion to amend, courts have placed the burden upon the movant to show some valid
reason for his neglect and delay."  *Id.* (citations omitted).  "Mere delay, however, absent a
showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the
right to amend."  *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)
(citations omitted).

Here, Plaintiff's motion to amend was filed less than six months after the original
complaint was served.  *See* Dkt. Nos. 1, 39.  Courts in this Circuit have found that similar and
even longer delays are insufficient to warrant denial of leave to amend.  *See, e.g.*, *Middle Atlantic
Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968) (holding that a three year delay
from the filing of the initial complaint was a factor to be considered but, in the absence of bad
faith or prejudice to the opposing party, the delay alone was insufficient to deny relief); *see also
Catapano v. Western Airlines, Inc.*, 105 F.R.D. 621, 623 (E.D.N.Y. 1985) (stating that a period of
one year between the plaintiff's filing of the original complaint and the plaintiff's motion to amend
is not enough to constitute undue delay).  Accordingly, the Court finds that the less than six-
month dely in filing an amended complaint does not constitute undue delay.

### 2. Bad Faith

---

[2](...continued)
Plaintiff's motion to amend, the Court will frame its analysis around Plaintiff's motion to amend,
and address the legal arguments asserted in Defendant's motion to dismiss below.

Under Rule 15(a), a moving party's dilatory motive can also provide a basis for a court's denying that party's motion to amend a pleading.  *See Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CV-2800, 2006 WL 3833440, *4 (S.D.N.Y. July 24, 2008) (citing *Foman*, 371 U.S. at 182).  Here, Defendant does not allege, nor does the record indicate, that Plaintiff's motion to amend was brought in bad faith.  *See* Dkt. No. 40.  Accordingly, the Court finds that Plaintiff's cross motion to amend has not been made in bad faith or with a dilatory motive.

### 3. Undue Prejudice to Defendant

A party's motion for leave to amend the pleadings may be denied when the proposed amendment would cause undue prejudice to the nonmoving party.  *See Foman*, 371 U.S. at 182. The burden is on the party opposing the motion to establish that "'granting such leave would be unduly prejudicial.'"  *Breyette v. Amedore*, 205 F.R.D. 416, 418 (N.D.N.Y. 2002) (quoting *State of New York v. Panex Indus., Inc.*, No. 94–CV–0400E, 1997 WL 128369, *2 (W.D.N.Y. Mar. 14, 1997)).  In determining what constitutes prejudice, courts consider whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Id*. (citation and internal quotations omitted).  "Courts also consider the particular procedural posture of the case." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).  Finally, "[c]ourts will . . . consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading."  *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 35 (N.D.N.Y. 2009) (citing *Hanlin v. Mitchelson*, 794 F.2d 824, 841 (2d Cir. 1986)) (other citation omitted).

While Defendant has not argued that it would be prejudiced by the expansion of the scope of discovery, the Court finds that the addition of the proposed plaintiffs and claims would not be unduly prejudicial to Defendant. *See* Dkt. No. 40 at 4; *see also United States v. Cont'l Illinois Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (holding an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading"); *see also Agerbrink*, 155 F. Supp. 3d at 455 (quotation omitted) (holding that "[w]hile some additional discovery will certainly be necessary, the possibility 'that an amendment will require the expenditure of additional time, effort, or money does not constitute "undue prejudice"'").

The Court notes that this action is in its infancy and that discovery has not begun. In similar circumstances, courts in this Circuit have held that the defendant would not be unduly prejudiced by amendment of the complaint. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116, 2009 WL 1357946, *4 (S.D.N.Y. May 12, 2009) (citing *Ginsberg v. Gov't Props. Trust, Inc.*, No. 07-CV-365, 2008 WL 3833876, *2 (S.D.N.Y. Aug. 13, 2008)) (finding that claims arising out of the same agreement at issue in the underlying complaint, the similarity between likely defenses and legal issues raised by amendment and those raised in the original claim, and the lack of a trial date and pending dispositive motions weighed against a finding of undue prejudice). Additionally, much of the discovery related to the proposed amendments overlaps with that required for the current claims. *See Agerbrink*, 155 F. Supp. 3d at 455. Thus, the need for additional discovery would not unduly prejudice Defendant.

The same reasoning applies to Plaintiff's proposed amendment to include a cause of action pursuant to Section 349 of the New York General Business Law. *See* Dkt. No. 39-1 at 29-31. A review of the amended complaint makes plain that "the new claim [is] merely [a] variation[] on

8

the original theme . . ., arising from the same set of operative facts as the original complaint." *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986). The Court notes that the additional claim is nearly identical to Plaintiff's claim pursuant to the Pennsylvania Consumer Protection Law. *See* Dkt. No. 39-1 at 27-31. The only difference between the claims is that the proposed addition includes allegations related to fees imposed on so-called "phantom transactions" rather than on APPSN transactions and intrabank transfers. *See id.* However, these allegations arise out of the same agreements and business practices at issue in the original complaint. *See id.* Thus, Defendant was on notice of such a claim. Therefore, the Court finds that Defendant will not be unduly prejudiced by the addition of the New York state law claim.

The Court finds that, because the motion to amend has been made at a relatively early stage of the proceeding (*i.e.*, less than six months after service of the original complaint and before discovery has commenced), and Defendant was on notice of the facts supporting the proposed amended complaint, Defendant will not suffer undue prejudice as a result of the amendment.

### 4. Futility

"In addition to undue delay, bad faith, and undue prejudice, a court may exercise its discretion to deny a party's motion to amend a pleading when the proposed amendment would be futile." *Am. Med. Ass'n*, 2006 WL 3833440, at *7 (citing *Foman*, 371 U.S. at 182). An amendment is considered futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive such a motion, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quotation omitted).

### a. Breach of Contract

"To state a claim for breach of contract under New York law, 'the complaint must allege: [(1)] the formation of a contract between the parties; [(2)] performance by the plaintiff; [(3)] failure of defendant to perform; and [(4)] damages.'"[3] *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotation omitted). "Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide'" and where the contract is unambiguous, a court is "'required to give effect to the contract as written.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citations omitted). "In reviewing a motion to dismiss for a breach of contract claim pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] the Court may interpret a contract properly before it and should 'strive to resolve any contractual ambiguities in the non-moving party's favor.'" *Gerdau Ameristeel US Inc. v. Ameron Int'l Corp.*, No. 13-CV-7169, 2014 WL 3639176, *3 (S.D.N.Y. July 22, 2014) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "However, the court is 'not constrained to accept the allegations of the pleading in respect to the construction of the contract.'" *Id.*

"When the meaning of a contract is litigated, a reviewing court ordinarily looks only at the words used by the drafter, who presumably understood what they intended." *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 426 (2d Cir. 1992). It is well-accepted that courts should construe contracts according to the parties' intent as derived from the contracts' unambiguous

---

[3] While it is unclear whether Plaintiff's breach of contract claim is brought under New York or Pennsylvania law, for the sake of the present motions, the Court will apply New York state law in its analysis because it is substantially similar to relevant Pennsylvania law. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013) (holding that "[u]nder Pennsylvania law, a breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages").

terms. The parties' intent is derived "from the plain meaning of the language employed in the agreements," *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (quotation and citation omitted), when the agreements are "read as a whole." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). Divining the parties' intent requires a court to "give full meaning and effect to all of [the contract's] provisions." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (quotation and citation omitted). Courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (citations omitted). When the parties' intent is clear – *i.e.*, unambiguous – the contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005)). A contract is unambiguous where the contract's terms have "a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin,* 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)).

If reasonable minds could differ about the meaning of contractual language, however, such language is ambiguous. *Lockheed Martin,* 639 F.3d at 69 (describing contractual language as ambiguous when it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement"). The Court must then turn to extrinsic evidence to determine the parties' intent. *See State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985) (per curium). While extrinsic evidence generally may not vary or contradict the terms of a fully integrated document, it may be used to interpret facially ambiguous language in the contract. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008).

Plaintiff's proposed amendment regarding his breach of contract claim, brought by Plaintiff, Ms. Thompson, and Mr. Doxey, alleges that Defendant breached the account agreement by charging overdraft fees on APPSN transactions, intrabank transfers, and on verification transactions. *See* Dkt. No. 39-1 at ¶¶ 123-25. The proposed amended complaint would seek to substitute Ms. Thompson for Plaintiff for the breach of contract claim regarding overdraft fees on APPSN transactions. *See id.* at ¶¶ 123; Dkt. No. 39 at 1. Both parties rely on a provision of the account agreement which states that "the Bank may, at its discretion, authorize and pay certain overdraft items when you do not have sufficient available funds in your account." *See* Dkt. No. 39-2 at 2. Based on this language, it is equally reasonable to understand that an overdraft fee is assessed at the time Defendant elects to make the payment, as Plaintiff asserts, or that an overdraft fee is assessed at the time of settlement of the transaction, as Defendant asserts. *See* Dkt. No. 39-1 at ¶ 19; Dkt. No. 35-1 at 10. Because this material term is subject to more than one reasonable interpretation, it is ambiguous. Notably, similar language has been found to be ambiguous by the Second Circuit. *See Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33, 35 (2d Cir. 2017) (holding contractual language which stated "[the bank] may in our sole discretion, . . . elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance" was ambiguous). Accordingly, the Court finds that Plaintiff's proposed claim regarding the assessment of overdraft fees on APPSN transactions would survive a motion to dismiss and, thus, the amendment is not futile.

Additionally, Plaintiff's proposed amended complaint alleges that Defendant breached the account agreement by charging overdraft fees on transfers between Community Bank accounts. *See* Dkt. No. 39-1 at ¶ 124. Defendant argues that the account agreement expressly permits the

imposition of overdraft fees on intrabank transfers. *See* Dkt. No. 35-1 at 19-23. Defendant quotes

a number of sections of the Overdraft Disclosure and claims that it clearly indicates that overdraft

fees apply to "all banking transactions." *Id.* at 20. However, these quotations are misleading. A

review of the Overdraft Disclosure makes clear that the sections quoted by Defendant apply not to

Defendant's ordinary overdraft procedures, but to its practices regarding the "Automated

Program." *See* Dkt. No. 39-2 at 8.

The "Automated Program" is an enhanced overdraft protection program for accounts in

"good standing" in which accounts are added, removed, or re-instated to the program based on

Defendant's discretion. *Id.* The list of "covered transactions" cited by Defendant is labeled

"Automated Program Covered Transactions and Elections," and seemingly applies only to those

enrolled in the Automated Program. *See id.* However, the Overdraft Practices document states, in

relevant part

> [P]articipants in our Non-Automated Program will generally have
> other electronic transactions such as . . . in-branch [and] Internet
> banking, . . . rejected or declined, if at the time of the transaction it
> does not appear that sufficient funds are present.
>
> . . .
>
> [F]or participants in the Non-Automated Program, branch personnel
> will make a determination to pay or return . . . applicable
> transactions that are presented, where the result of the transaction
> would be a negative balance due to insufficient funds. Overdraft,
> NSF, merchant and other fees may still apply.

Dkt. No. 39-2 at 9. These provisions expressly provide that Defendant may reject Internet

banking and in-branch transactions if sufficient funds are not present to cover the transaction and

that the account holder may be subject to overdraft fees. *Id.* Thus, the terms of the agreement

have a "definite and precise meaning, as to which there is no reasonable basis for a difference of

opinion." *Lockheed Martin*, 639 F.3d at 69 (citation omitted). Because the provision is unambiguous, the amendment would not survive a motion to dismiss. *See Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) (citing *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 Fed. Appx. 48, 49 (2d Cir. 2008)). Therefore, Plaintiff's proposed amendment regarding the assessment of fees on intrabank transfers is futile.

Finally, Plaintiff's proposed amended complaint alleges that Defendant breached the account agreement by assessing overdraft fees on so-called "phantom transactions." *See* Dkt. No. 39-1 at ¶ 125. This claim is brought by Mr. Doxey. *See id.* These transactions, according to Plaintiff, occur when a company deposits and then immediately withdraws a small amount of money in order to verify the existence of the account. *See id.* at ¶¶ 92-95. "Phantom transactions," or micro-deposits, do not reduce the account balance. *See id.* Rather, the funds necessary to cover the transaction are deposited into the account and then subsequently withdrawn by the depositing company. *Id.* The agreement, when read in its entirety, gives the impression that overdraft fees are assessed only on transactions which reduce the account balance. *See generally* Dkt. No. 39-2. In fact, the agreement describes an overdraft as occurring "when you do not have enough money in your account to cover a transaction, but we cover the transaction on your behalf." *Id.* at 7. Because the agreement implies that an overdraft only occurs when the account balance is not sufficient to cover the charge, and micro-deposits include the funds necessary to cover the charge, reasonable minds could differ as to the meaning of this term. Thus, the Court finds that Plaintiff's proposed amendment would not be futile in this respect.

Accordingly, Plaintiff's motion to amend is granted with respect to the allegations of Ms. Thompson and Mr. Doxey, but the motion is denied with respect Plaintiff.[4]

### b. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff also alleges that Defendant breached of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 at ¶¶ 171-76. "New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2014 WL 1303135, *6 (S.D.N.Y. Mar. 31, 2014) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). "[A] claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." *Id.* (citing *Cordell v. McGraw-Hill Cos., Inc.*, No. 12 Civ. 0637, 2012 WL 5264844, *4 (S.D.N.Y. Oct. 23, 2012)) *aff'd*, 525 Fed. Appx. 22 (2d Cir. 2013). "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim." *ARI & Co., Inc. v. Regent Intern. Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, *8 (S.D.N.Y. Nov. 6, 1997)). "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). When a plaintiff alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, courts

---

[4] Defendant's motion to dismiss is granted with respect to Plaintiff's breach of contract claim, but is denied with respect to the breach of contract allegations by Ms. Thompson, regarding APPSN transactions, and Mr. Doxey, regarding phantom transactions.

routinely dismiss the latter as duplicative. *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956, 2014 WL 837050, *6 (S.D.N.Y. Mar. 3, 2014) (collecting cases). "[U]nder Pennsylvania law, the implied covenant of good faith does not allow for a cause of action separate and distinct from a breach of contract claim." *Burton*, 707 F.3d at 432. Rather, "'a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.'" *Id.* (quotation omitted).

Here, Plaintiff's breach of the implied covenant of good faith and fair dealing claim is based on the same factual allegations relied on in his breach of contract claim. *See* Dkt. No. 39-1 at ¶ 128. Thus, regardless of whether New York or Pennsylvania law governs, the claims are duplicative. Accordingly, Plaintiff's amendment regarding his breach of the implied covenant of good faith and fair dealing is futile.[5]

### c. Pennsylvania Unfair Trade Practices and Consumer Protection Law

Plaintiff also seeks to amend his claim under Pennsylvania's UTPCPL to include allegations by Ms. Thompson. *See* Dkt. No. 39-1 at ¶¶ 131-142. The proposed amended complaint alleges liability under the "catch all" provision of the UTPCPL based on Defendant's allegedly improper assessment of overdraft fees on APPSN transactions and intrabank transfers.[6] *See id.*

"The UTPCPL is designed to protect the public from fraud and deceptive business practices." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008). "The

---

[5] For the same reasons, Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is granted.

[6] Plaintiff brings this claim based on the fees imposed on intrabank transfers, while Ms. Thompson's claim is based on Defendant's assessment of fees on APPSN transactions. *See* Dkt. No. 39-1 at ¶¶ 132, 137.

statute provides a private right of action for '[a]ny person who purchases . . . goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property' on account of the seller's unfair or deceptive acts or practices." *Id.* (citing P.A. 73 P.S. § 201-9.2(a)). The applicable section of the UTPCPL prohibits unfair or deceptive acts or practices in the conduct of commerce and defines such a practice as "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *See id.* at § 201-2(2)(xxi). "Deceptive conduct is defined as 'intentional misleading by falsehood spoken or acted. An act or practice is deceptive or unfair if it has the capacity or tendency to deceive.'" *Lindsley v. Am. Honda Motor Co.*, No. 16-CV-941, 2017 WL 2930962, *8 (E.D. Pa. July 7, 2017) (citation omitted). "To state a claim for a deceptive act under the UTPCPL's catch-all provision, 'a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.'" *Id.* (citation omitted).

Plaintiff alleges that Defendant knowingly and intentionally made omissions by failing to disclose its policies and practices in assessing overdraft fees on APPSN transactions and intrabank transfers, thereby causing ascertainable losses in the form of excessive overdraft fees. *See* Dkt. No. 39-1 at ¶¶ 138, 140. However, Plaintiff has failed to allege justifiable reliance.

To establish justifiable reliance, a plaintiff must have "relied upon the statement or representation *as an inducement to his action or injurious change of position*." *Yandarisovitz v. Ohio State Life Ins. Co.*, No. 5:18-CV-1036, 2018 WL 4203840, *6 (E.D. Pa. Aug. 31, 2018) (quoting *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Super. Ct. Pa. 2004)) (emphasis in original). In *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008), the Third Circuit Court of Appeals found that the plaintiff did not allege justifiable reliance. There, the Third Circuit found that although the plaintiff had alleged that the defendant made misrepresentations and

omissions concerning the products at issue, he did not allege that the defendant's deception induced him to purchase the product or engage in any other detrimental activity. *Id.* Similarly here, Plaintiff alleged that Defendant intentionally made omissions which caused him to suffer ascertainable losses, but failed to allege that Defendant's omissions or misrepresentations induced him, or Ms. Thompson, to open or maintain an account with Defendant or engage in injurious behavior. *See* Dkt. No. 39-1 at ¶¶ 131-42. Thus, the Court finds that Plaintiff failed to allege justifiable reliance. Accordingly, Plaintiff's motion to amend is denied and Defendant's motion to dismiss is granted.

### d. New York General Business Law

Plaintiff's proposed amended complaint alleges violations of Section 349 of the New York State General Business Law. *See* Dkt. No. 39-1 at ¶¶ 143-58. The additional New York claim is asserted by Mr. Doxey on behalf of the "New York Subclass." *Id*. at ¶ 144. The proposed amended complaint alleges that Defendant engaged in unfair, deceptive, and unlawful trade acts or practices by "advertising that it would not charge [overdraft] fees on transactions that did not overdraw accounts; would not charge [overdraft] fees on intrabank transfers, and would not charge [overdraft] or [nonsufficient funds] fees on phantom debits." *Id*. at ¶ 149. The proposed amended complaint further alleges that Defendant's conduct was "to the detriment of Plaintiff and members of the New York Subclasses." *Id*. at ¶ 150.

Section 349 of the New York General Business Law ("Section 349") is "directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24 (1995). Section 349 "prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state and provides a cause of action to any person who has been injured by a violation of the section." *Cruz v.*

*Fxdirectdealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013). Section 349 "requires a finding of conduct that is consumer-oriented and that would mislead a reasonable consumer causing actual injury." *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (internal quotations and alterations omitted). "To maintain a cause of action under Section 349, a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Heskiaoff v. Sling Media, Inc.*, 719 Fed. Appx. 28, 31 (2d Cir. 2017) (quotation and alterations omitted).

Initially, the Court notes that Plaintiff's Section 349 claim is brought by Mr. Doxey and alleges that Defendant violated Section 349 by charging overdraft fees on APPSN transactions, intrabank transfers, and phantom transactions. *See* Dkt. No. 39-1 at ¶¶ 149-50. However, the factual allegations included in the proposed amended complaint regarding Mr. Doxey's injury relate only to the phantom transactions. *See id.* at ¶¶ 92-101. Mr. Doxey does not allege that he was injured by Defendant's alleged practice of charging overdraft fees on APPSN transactions and intrabank transfers. *See id.* at ¶¶ 92-101. Thus, Mr. Doxey's Section 349 claim may only proceed as to Defendant's alleged practice of charging overdraft fees on phantom transactions.

To establish that conduct is "consumer-oriented," a plaintiff must establish that "the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers'*, 623 N.Y.2d at 26-27). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Id.*

Here, the proposed amended complaint alleges that Defendant's violations of Section 349 stem from the representations made in the standard Account Agreement and documents created by

19

Defendant regarding its policy and practice for overdraft fees. *See* Dkt. No. 39-1 at ¶¶ 3, 15, 92-108, 143-50. Thus, the Court finds that the proposed amended complaint plausibly alleged consumer-oriented conduct. *See Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015) (finding the plaintiff has "plausibly alleged consumer-oriented conduct based on an Account Agreement the Defendant uses with all of its deposit account customers").

"As to the second element [of Section 349], whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Heskiaoff*, 719 Fed. Appx. at 31 (quotation and alterations omitted). A deceptive practice "need not reach the level of common-law fraud to be actionable under section 349[.]" *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (citations omitted). "It is not necessary under [Section] 349 that a plaintiff establish the defendant's intent to defraud or mislead." *Nick's Garage, Inc.*, 875 F.3d at 124 (quotations and alterations omitted). Rather, the "term 'deceptive practice' in Section 349 [has been] interpreted to mean acts which are dishonest or misleading in a material respect." *Id.* (quotation omitted).

Here, Mr. Doxey alleges that in the course of selling or furnishing banking services, Defendant represented and advertised to customers that they would not be charged overdraft fees on phantom transactions. Dkt. No. 39-1 at ¶ 149. According to Mr. Doxey, Defendant omitted, suppressed, and concealed the material fact that it would charge overdraft fees on such transactions. *Id.* As discussed above, the agreement describes an overdraft as occurring "when you do not have enough money in your account to cover a transaction, but we cover the transaction on your behalf." Dkt. No. 39-2 at 7. A reasonable consumer could understand that overdraft fees will not be charged on phantom transactions because such transactions include the funds necessary to cover the charge. Thus, the Court finds that Defendant's representation in the

Account Agreement and associated documents, while not intentionally misleading, could mislead a reasonable consumer acting reasonably under the circumstances. *Heskiaoff*, 719 Fed. Appx. at 31.

Finally, "[i]njury under section 349 may be pled by alleging a monetary loss resulting from a defendant's deceptive acts, but the loss must be independent of the purchase price of the product." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, *10 (E.D.N.Y. Sept. 24, 2014) (citing *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999), *aff'd*, 531 Fed. App'x 110 (2d Cir. 2013))). "Although a monetary loss is a sufficient injury to satisfy the requirement under [Section] 349, that loss must be independent of the loss caused by the alleged breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

Here, Mr. Doxey's alleged damages for both the breach of contract claim and Section 349 claim are the fees imposed by Defendant as a result of the overdrafts. *See* Dkt. No. 39-1 at ¶¶ 62-64, 100, 130, 152. Mr. Doxey has not alleged that Defendant failed to provide services promised in the contract or that he sustained damages in the amount of the purchase price. *See Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 224 (E.D.N.Y. 2018). Nor has Mr. Doxey alleged that the damages suffered resulted in the accumulation of interest or anything which might make the damages for his Section 349 claim different than his breach of contract claim. *See Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095, 2019 WL 3714801, *7-8 (E.D.N.Y. May 10, 2019). Thus, the Court finds that Mr. Doxey has failed to allege an injury that is independent of his breach of contract claims. Accordingly, Plaintiff's motion to amend is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's cross motion for leave to amend (Dkt. No. 39) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendant's motions to dismiss (Dkt. No. 35) are **GRANTED in part and DENIED in part**;[7] and the Court further

**ORDERS** that Plaintiff Kelly is **DISMISSED** from this action; and the Court further

**ORDERS** that Plaintiff is directed to file an amended complaint **within ten (10) days**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 18, 2020
     Albany, New York

`Mae A. D'Agostino`
`U.S. District Judge`

---

[7] The surviving claims are (1) Ms. Thompson's breach of contract action regarding fees on APPSN transactions and (2) Mr. Doxey's breach of contract action regarding fees on phantom transactions.