UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TINA THOMPSON and SCOTT DOXEY, on
behalf of themselves and all others similarly
situated,

                Plaintiffs,

     vs.

COMMUNITY BANK, N.A.,

              Defendant.

CASE NO.  8:19-cv-0919-MAD-CFH

## UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ...................................................................................................................1

   A. Procedural History ..........................................................................................................1

   B. Class Counsel's Investigation .........................................................................................3

   C. Summary of the Settlement Terms ..................................................................................4

      1. The Settlement Class...............................................................................................4

      2. Relief for the Benefit of the Settlement Class ........................................................4

         a. Settlement Fund & Uncollected Overdraft Fees ...........................................4

         b. Allocation of the Settlement Class Member Payments ..................................5

         c. Distribution of Settlement Class Member Payments ......................................6

         d. Forgiveness of Uncollected Overdraft Fees ..................................................6

         e. Disposition of Residual Funds .......................................................................6

         f. Practice Change – Modified Disclosures .......................................................7

      3. Releases ...................................................................................................................7

      4. The Notice Program ................................................................................................7

      5. Settlement Administration .......................................................................................9

      6. Settlement Termination .........................................................................................10

      7. Class Representative's Service Award ...................................................................10

      8. Attorneys' Fees and Costs ....................................................................................11

III. ARGUMENT.......................................................................................................................11

   A. The Legal Standard for Preliminary Approval..............................................................11

   B. This Settlement Satisfies the Criteria for Preliminary Approval ..................................12

      1. This Settlement Is the Product of Good Faith, Informed and Arm's Length
         Negotiations .........................................................................................................12

2. This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations ......................................................................................13

    a. The Risks of Establishing Liability and Damages Demonstrate That This Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery.............................14

    b. The Expense, Complexity, and Likely Duration of Further Litigation ................17

    c. The Risk of Maintaining Class Action Status Throughout Trial ...........................18

    d. The Extent of Discovery Completed and the Stage of the Proceeding ...............18

    e. The Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members ....................................................................................19

    f. The Terms of Any Proposed Award of Attorneys' Fees.......................................20

C. Certification of the Settlement Class Is Appropriate...................................................20

D. The Proposed Notice Program Is Constitutionally Sound ..........................................23

E. Notice Pursuant to the Class Action Fairness Act (CAFA)........................................24

F. Plaintiff's Counsel Should Be Appointed Class Counsel ...........................................25

IV.   CONCLUSION.......................................................................................................................25

## TABLE OF CONTENTS

**Cases**                                                                                                    **Page(s)**

*Am. Medical Ass'n v. United Healthcare Corp.,*
  00 Civ. 2800 (LMM), 2009 U.S. Dist. LEXIS 45610 (S.D.N.Y. May 19, 2009) ............................ 13

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ......................................................................................................... 21, 22

*Baudin v. Res. Mktg. Corp., LLC,*
  No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280
  (N.D.N.Y. Aug. 13, 2020) .......................................................................................... 14, 15, 20

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
  07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ................................ 18

*Bodnar v. Bank of Am., N.A.,*
  No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ........................................ 16

*Cavalieri v. GE,*
  No. 06cv315 (GLS/DRH), 2009 U.S. Dist. LEXIS 68693 (N.D.N.Y. Aug. 5, 2009) ................. 18

*Charron v. Weiner,*
  731 F.3d 241 (2d Cir. 2013) ......................................................................................................... 17

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ......................................................................................................... 13

*Cruz v. Sal-Mark Rest. Corp.,*
  No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529
  (N.D.N.Y. Jan. 28, 2019) ......................................................................................... 14, 15, 16, 18, 19

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ......................................................................................................... 23

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ......................................................................................................... 12

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) ......................................................................................................... 13

*Hanifin v. Accurate Inventory & Calculating Serv.,*
  2014 U.S. Dist. LEXIS 115710 (N.D.N.Y. Aug. 20, 2014) ........................................................ 17

*Hawthorne v. Umpqua Bank,*
  No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) ......................... 16

*Hill v. Cty of Montgomery,*
No. 9:14-cv-00933 (BKS/DJS), 2020 U.S. Dist. LEXIS 168099
(N.D.N.Y. Sep. 15, 2020) ........................................................................ 11, 18, 22

*Hill v. Cty of Montgomery,*
No. 9:14-CV-933 (BKS/DJS), 2017 U.S. Dist. LEXIS 221081
(N.D.N.Y. Sep. 29, 2017) .................................................................................. 21, 22

*Hill v. Cty of Montgomery,*
No. 9:14-cv-00933 (BKS/DJS), 2018 U.S. Dist. LEXIS 140305
(N.D.N.Y. Aug. 20, 2018) ......................................................................................... 22

*In re Checking Account Overdraft Litig.,*
No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562 (S.D. Fla. Aug. 2, 2013) .................... 16

*In re Checking Account Overdraft Litig.,*
No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015) .................... 16

*In re Global Crossing,*
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................ 15

*In re Indep. Energy Holdings PLC Sec. Litig.,*
00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) .............................. 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................................... 14, 20

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d Cir. 2001) .................................................................................. 23

*Joel A. v. Giuliani,*
218 F.3d 132 (2d Cir. 2000) .................................................................................. 12

*Kirby v. FIC Rest., Inc.,*
No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109 (N.D.N.Y. Sep. 28, 2020)..... 12, 17

*Kirby v. FIC Rest., Inc.,*
No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 93037 (N.D.N.Y. May 28, 2020) ................ 20

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.,*
No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043
(N.D.N.Y. June 17, 2016) ........................................................................................ 14

*Mosser v. TD Bank, N.A.,*
No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013) ................ 16

*Mullane v. Central Hanover Navy Federal & Trust Co.,*
339 U.S. 306 (1950) ................................................................................................ 24

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) .................................................................................. 14

*Oneida Indian Nation v. Cty. of Oneida,*
  199 F.R.D. 61 (N.D.N.Y. 2000) .......................................................................... 18

*Parkis v. Microsoft Corp.,*
  No. 5:09-CV-110 (FJS/GHL), 2009 U.S. Dist. LEXIS 47880 (N.D.N.Y. June 4, 2009) ............ 17

*Roberts v. Capital One,*
  16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) .................................................... 15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
  659 F.3d 234 (2d Cir. 2011) .............................................................................. 22

*Skinner v. Citibank, N.A.,*
  No. 5:12-cv-820 (DNH/DEP), 2014 U.S. Dist. LEXIS 184349 (N.D.N.Y. Apr. 2, 2014) ..........24

*United States v. Glens Falls Newspapers, Inc.,*
  160 F.3d 853 (2d Cir. 1998) .............................................................................. 17

*Wal-Mart Stores v. Visa U.S.A.,*
  396 F.3d 96 (2d Cir. 2005) .......................................................................... 11, 13

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ...................................................................................... 21

*Weber v. Align Tech., Inc.,*
  No. 5:07-CV-0535 (GTS/ATB), 2010 U.S. Dist. LEXIS 54187 (N.D.N.Y. June 2, 2010) .......... 22

## **Rules**

Federal Rules of Civil Procedure 12 ................................................................................ 2

Federal Rule of Civil Procedure 23 ......................................................................... *passim*

28 U.S.C. Section 1715(b) .................................................................... 10, 24, 25

## **Other**

*Manual for Compl. Lit.,* § 21.311 ................................................................................ 24

*Manual for Compl. Lit.,* § 21.312 ................................................................................ 24

*Manual for Compl. Lit.,* § 21.632 ................................................................................ 21

*Manual for Compl. Lit.,* § 21.633 ................................................................................ 21

## I.      INTRODUCTION

Plaintiffs Tina Thompson and Scott Doxey respectfully move for Preliminary Approval[1] of the Settlement Agreement and Release, attached as **_Exhibit A_**, which will resolve all claims against Defendant Community Bank N.A. in the above-captioned Action. The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law. Indeed, given the significant risks inherent in this Action, the $3,460,833.02 Value of the Settlement, consisting of Community Bank's: (a) cash payment of $2,850,000.00; and (b) agreement to forgive, waive, and agree not to collect an additional $610,833.02 in Uncollected Overdraft Fees – is an outstanding result for the Settlement Class. In addition, and as result of this litigation, the Defendant has improved its disclosures of the challenged practices.

The Settlement satisfies all Second Circuit criteria for settlement approval. One keystone of this Settlement is that all Settlement Class Members will automatically receive their pro rata share of the Net Settlement Fund. There are no claims forms, and Settlement Class Members will not be asked to prove they were damaged by Community Bank's APPSN Fees and Account Verification Fees practices. Instead, Community Bank's data will be used to determine which checking Account holders were harmed, and as a result incurred Relevant Overdraft Fees, and a formula will be applied to calculate each Settlement Class Member's distribution. Thus, the plan of allocation fairly and adequately accounts for the value of each Settlement Class member's individual claim. In the face of certain risks discussed below, this Settlement is fair and reasonable and merits Preliminary Approval.

## II.  BACKGROUND

### A.      Procedural History

On July 26, 2019, former Plaintiff Charles Kelly filed a putative class action complaint in the Action seeking damages, restitution, and declaratory relief arising from the allegedly unfair and

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.

147016689

unconscionable assessment and collection of APPSN Fees and Account Verification Fees. Dkt. 1.

On October 10, 2019, Community Bank's pre-motion letter requested the right to move to dismiss the complaint, which Plaintiff opposed on October 15, 2019. Dkt. 25, 27. During the pre-motion conference, the Court permitted its filing. On November 15, 2019, Community Bank moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 35.

On December 15, 2019, Plaintiff Charles Kelly moved to amend the Complaint, adding two new plaintiffs, Tina Thompson and Scott Doxey. Dkt. 39. In addition, Plaintiff Kelly also responded to Community Bank's Motion to Dismiss, asserting that the amended complaint would render the Motion to Dismiss moot. *Id.* Community Bank opposed the filing of an amended complaint.

On February 18, 2020, the Court granted in part and denied in part Plaintiff's motion to amend and granting in part and denied in part Community Bank's motion to dismiss. In pertinent part, Plaintiff Charles Kelly's individual claims were dismissed, and leave to amend was granted for the APPSN Fee claim and Account Verification Fee claim[2] under a breach of contract theory, finding both claims would survive a motion to dismiss. Dkt. 41.

On February 28, 2020, Plaintiffs Thompson and Doxey filed an Amended Complaint, alleging claims on behalf of two classes for breach of the Account agreement. On March 13, 2020, Community Bank filed its Answer and Affirmative Defenses. Dkt. 42.

The Parties were directed by the Court to submit their Case Management Plan on April 6, 2020, which resulted in the Parties appearing for an April 13, 2020 pretrial conference and the April 14, 2020 Scheduling Order. Dkt. 45, 46.

The Parties initiated the discovery process with Plaintiffs Thompson and Doxey serving document requests and interrogatories on March 24, 2020, to which Community Bank served its written responses on June 29, 2020 and produced over 1,000 pages. Joint Declaration of Class Counsel Jeff Ostrow and Jeffrey Kaliel ("Decl."), attached as **Exhibit B**, at ¶ 14.

---

[2] The Amended Complaint alleges this claim as the assessment of Overdraft Fees on "phantom transactions," when a company deposits and then immediately withdraws a small amount of money in order to verify the existence of the account.

The Parties conferred about Community Bank's discovery objections, resulting in Plaintiffs' letter motion on September 30, 2020. Dkt. 51. Community Bank opposed it on October 7, 2020. Dkt. 53. On October 16, 2020, Plaintiffs also moved for a discovery conference, which was granted. Dkt. 55, 56, 57. The parties jointly requested the discovery conference be canceled simultaneously with their Notice of Settlement on October 20, 2020, which was granted. Dkt. 58, 59, 60.

The Court ordered the Parties to attend mediation. Dkt. 46. On October 14, 2020, the Parties mediated before a nationally-renowned mediator with substantial experience mediating consumer banking related claims, Eric D. Green. Decl. ¶ 16. The mediation did not result in settlement, but after further negotiations, they agreed to the material settlement terms. *Id.*

On October 20, 2020, the Parties filed a Notice of Settlement, confirming their agreement in principle and requesting that the Court stay all deadlines in the Action pending the Parties execution of the Agreement and the filing of this Motion. Dkt. 59. The Parties finalized and signed the Agreement on November 23, 2020. *See* Ex. A.

On November 24, 2020, the Court approved the Parties' stipulation for an order authorizing the modification of the case style to remove Plaintiff Charles Kelley. Dkt. 62.

### B.    Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Community Bank. Decl. ¶ 6. Class Counsel interviewed a number of Community Bank customers to gather information about Community Bank's conduct and its impact upon consumers, which was essential to their ability to understand the nature of the Community Bank's conduct, the language of the Account agreement and other documents at issue, and potential remedies. *Id.*

Class Counsel expended significant resources researching and developing the legal claims. *Id.* ¶ 7. They are familiar with the claims as they have litigated and resolved other fee claims with similar factual and legal issues. *Id.* ¶ 8. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the necessary data to calculate each Settlement Class member's damages. *Id.* The issues were heavily contested at the Motion to Dismiss stage, following which the Parties initiated discovery. *Id.* ¶¶ 10-15. Class Counsel, along with its fee

expert, spent significant time analyzing data regarding Community Bank's fee revenue related to the assessment of the APPSN Fees and the Account Verification Fees at issue. *Id.* ¶¶ 14. The Parties conferred regarding the calculations' accuracy, with Community Bank retaining its own expert. Prior to mediation, Class Counsel and Plaintiff's expert used this data to analyze the damages at issue. *Id.*

Consequently, Class Counsel mediated with Mediator Eric D. Green fully informed of the merits of Settlement Class members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and Settlement Class members and being fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id.* ¶ 16. After the mediation, Mr. Green continued to actively participate in the settlement discussions and helped the Parties reach an acceptable compromise. *Id.*

In sum, prior to negotiating the Settlement, Class Counsel spent significant time conferring with Plaintiffs, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery, working with an expert witness, and reviewing important documents and data. *Id.* ¶18. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

## C. Summary of the Settlement Terms.

### 1. The Settlement Class.

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "all current and former customers of Community Bank with consumer checking accounts, who were charged a Relevant Overdraft Fee during the Class Period." Agreement at ¶ 49. Relevant Overdraft Fees include both APPSN Fees and Account Verification Fees. *Id.* ¶ 45. It includes both the APPSN Fee Class and the Account Verification Fee Class. Excluded from the Settlement Class is Community Bank, its parents, subsidiaries, affiliates, officers and directors; all Settlement Class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. *Id.* ¶ 49. The Class Period is from January 1, 2015 to December 31, 2019. *Id.* ¶ 21.

### 2. Relief for the Benefit of the Settlement Class.

#### a. Settlement Fund & Uncollected Overdraft Fees

The total Value of the Settlement is $3,460,833.02 consisting of Community Bank's: (a)

commitment to a establish and pay a cash Settlement Fund of $2,850,000.00, and its (b) agreement to forgive, waive, and not collect $610,833.02 in Uncollected Overdraft Fees. Decl. ¶¶ 28-29. The Settlement Fund will be used to: (a) pay Settlement Class Members their respective cash Settlement Class Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Class Representatives; (d) Settlement Administration Costs; and (e) if funds remain after the initial distribution to Settlement Class Members to distribute to the *cy pres* recipient. Agreement at ¶¶ 57, 77. Settlement Class Members who are entitled to forgiveness, waiver, and the agreement not to collect assessed, but unpaid Relevant Overdraft Fees will receive their benefits from the Uncollected Overdraft Fees. *Id.* ¶ 50. A Settlement Class Member may qualify for both a Settlement Class Member Payment and forgiveness of Uncollected Overdraft Fees by virtue having paid one or more Relevant Overdraft Fees and having been assessed at least one other Relevant Overdraft Fee that was not paid and thus became an Uncollected Overdraft Fee. *Id.* ¶ 59.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 90 days following the Effective Date of the Settlement, Community Bank and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members. *Id* at ¶ 76(d)(iii).

**b. Allocation of the Settlement Class Member Payments**

Of the $2,850,000.00 paid into the Settlement Fund, $2,830,000 (99.3%) is allocated to the APPSN Fee Class and $20,000.00 (.7%) is allocated to the Account Verification Fee Class. *Id* at ¶ 76(d). If applicable, Settlement Class Members may receive payments as members of the APPSN Fee Class and the Account Verification Fee Class. *Id.* Based on this allocation, payments from the Net Settlement Fund to the Settlement Class Members shall be calculated as follows:

      i.      Settlement Class Members of the APPSN Fee Class shall be paid per incurred APPSN Fee calculated as follows: (0.993 of the Net Settlement Fund/Total APPSN Fees) x Total number of APPSN Fees charged to and paid by each APPSN Fee Class member; and

      ii.      Settlement Class Members of the Account Verification Fee Class shall be paid per Account Verification Fee calculated as follows: (0.007 of the Net Settlement Fund/Total

Account Verification Fees) x Total number of Account Verification Fees charged to and paid by each Account Verification Fee Class member.

*Id* at ¶ 76(d)(i)-(ii).

### c. Distribution of Settlement Class Member Payments

Settlement Class Members who are Current Account Holders when the Net Settlement Fund is distributed will receive a credit in the amount of their Settlement Class Member Payments applied to any account they are maintaining individually at the time of the credit. *Id.* ¶ 76(d)(iii). If by the deadline to apply credits of Settlement Class Member Payments to accounts Community Bank is unable to complete certain credit(s), Community Bank shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for Past Account Holders to receive payment. *Id.*

For Settlement Class Members who are Past Account Holders when the Net Settlement Fund is distributed or at that time do not have an individual account, they shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *Id.* For jointly held accounts, checks will be payable to all customers and mailed to the first customer listed on the account. *Id.* The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned by the Postal Service as undeliverable and will re-mail it once to the updated address or, in the case of a jointly held account, and in the Settlement Administrator's discretion, to an accountholder other than the one listed first. *Id.* The Settlement Class Member shall have one-hundred 180 days to negotiate the check. The total value of checks uncashed after 180 days shall be distributed to a Court-approved *cy pres* recipient. *Id.*

### d. Forgiveness of Uncollected Overdraft Fees

Uncollected Overdraft Fees shall be fully forgiven within 10 days after the Effective Date. *Id.* ¶ 76(e). In doing so, Community Bank shall update any negative reporting to Chexsystems or credit reporting agencies with respect to Settlement Class Members who receive such debt forgiveness. *Id.*

### e. Disposition of Residual Funds

Within one year after the date the Settlement Administrator mails the first Settlement Class

Member Payment, any remaining amounts resulting from uncashed checks shall be distributed to an appropriate *cy pres* recipient agreed to by the Parties and approved by the Court. *Id.* ¶ 77. In no event shall any portion of the Settlement Fund revert to Community Bank. *Id.* ¶ 76(d)(iv).

### f.  Practice Change – Modified Disclosures

Effective January 1, 2020, after this Action was filed, Community Bank modified its disclosures to better inform Account holders they may incur an Overdraft Fee on Debit Card transactions authorized against a positive available balance, if at the time of settlement, the account balance is negative. Decl. ¶ 39. This practice change inures to the benefit of Settlement Class Members and to other Community Bank customers, which has resulted in and will continue to result in millions of dollars of savings. *Id.*

### 3.  Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Community Bank from claims relating to the subject matter of the Action. The Releases are set forth in Section XI of the Agreement.

### 4.  The Notice Program.

The Parties recommend Epiq Class Action and Claims Solutions Inc. as the Settlement Administrator, one of the leading notice administration firms in the United States. The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information Community Bank has available about the Settlement Class. Decl. ¶ 21. The Notice Program is reasonably calculated to apprise Settlement Class members of the following through the Notice: a description of the material terms of the Settlement; a deadline to exclude themselves from the Settlement Class; a deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Agreement and other related documents. Agreement at ¶ 63 and Exhibits 1-2. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice, satisfying all applicable requirements of law, including Rule 23 and constitutional due process. Decl. ¶ 21.

The Notice Program is comprised of three parts: (1) direct Postcard Notice to all Settlement

Class members who did not agree to receive notices from Community Bank by email, or for whom the Settlement Administrator is unable to send Email Notice using the email address provided by Community Bank; (2) direct Email Notice to those Settlement Class members who agreed to receive account statements from Community Bank by email; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice posted on the Settlement Website and available by U.S. mail on request to the Settlement Administrator. Agreement at ¶¶ 67-69 and Ex. 1-2 thereto.

The Long Form Notice will describe the procedure that Settlement Class members must follow to opt-out of the Settlement or object to the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; or the Service Award for the Plaintiffs. Specifically, opt-outs must be postmarked no later than the last day of the Opt-Out Period, and objections must be postmarked no later than the last day of the Opt-Out Period (no later than 30 days before the Final Approval Hearing). *Id.* ¶¶ 36, 64. For an objection to be valid, it must include: (a) the name of the Action; (b) the objector's full name, address, and telephone number; (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) a description of the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (f) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that of the filed objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (g) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or

objector's counsel and any other person or entity; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 66.

The Notice Program (Postcard Notice and Email Notice, including the Notice Re-Mailing Process) shall be completed before the filing of the Motion for Final Approval.

The Settlement Website, which will include hyperlinks to the Agreement, the Long Form Notice, the Preliminary Approval Order, and such other documents as the Parties agrees to post or that the Court orders posted, will be established following Preliminary Approval and prior to the commencement of the Notice Program. *Id.* ¶ 63.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries and to receive automated responses, and to accept requests for Long Form Notices. *Id.* ¶ 62(d).

**5. Settlement Administration**

The Settlement Administrator is one of the leading class action settlement administrators in the United States. Its Settlement Administration responsibilities include:

a. Using the name and address information for Settlement Class members provided by Defendant in connection with the Notice Program approved by the Court, for the purpose of distributing the Postcard Notice and Email Notice, and later mailing Settlement Class Member Payments to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for Defendant to make the Settlement Class Member Payments by a credit to the Current Settlement Class Members' Accounts;

b. Establishing and maintaining a post office box for exclusion requests;

c. Establishing and maintaining the Settlement Website;

d. Establishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

e. Responding to any mailed Settlement Class member inquiries;

f. Processing all requests for exclusion from the Settlement Class;

g. Providing weekly reports to Class Counsel and Community Bank that summarize the number of exclusion requests received that week, the total number of exclusion requests received to date, and other pertinent information;

h. In advance of the Final Approval Hearing, preparing a declaration or

affidavit to submit to the Court confirming that the Notice Program was completed, describing how the Notice Program was completed, providing the names of each Settlement Class member who timely and properly requested exclusion from the Settlement Class, and any other information as may be necessary to allow the Parties to seek and obtain Final Approval;

i.      Distributing Settlement Class Member Payments by check to Past Account Holder Settlement Class Members and Current Account Holder Settlement Class Members who are unable to receive credits;

j.      Providing to Defendant the amount of the Settlement Class Member Payments to Current Account Holder Settlement Class Members and instructing Defendant to initiate the direct deposit or credit of Settlement Class Member Payments to Current Account Holder Settlement Class Members;

k.       Paying invoices, expenses, and costs upon approval by Class Counsel and Community Bank, as provided in the Agreement;

l.      Providing notice of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715; and

m.      Any other Settlement Administration function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement Funds have been distributed.

*Id.* ¶ 62.

### 6. Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement at ¶ 84. Community Bank also may terminate the Settlement if 5% or more of the total Settlement Class members opt-out. *Id.*

### 7. Class Representative's Service Award.

Class Counsel will seek a Service Award of $5,000.00 for each of the Class Representatives. Agreement at ¶ 76(b). If the Court approves the awards, the $10,000.00 will amount to 0.0029% of the Value of the Settlement. Decl. ¶ 22. The Service Awards will be paid from the Settlement Fund and will be in addition to the Settlement Class Member Payments the Plaintiffs will be entitled to receive under the Settlement. *Id.* The awards will compensate the Class Representatives for their time and effort and for the risks they assumed in prosecuting the Action. *Id.* Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) participating in conferences with Class Counsel; and (4) reviewing the settlement documentation. *Id.* In so doing, the Plaintiffs were integral to the case. *Id.* Community Bank does not object to Class Counsel's request for the Service Awards. Agreement at ¶ 76.b.

**8. Attorneys' Fees and Costs**.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs. Decl. ¶ 23. They are entitled to request, and Community Bank will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement at ¶ 76(a); Decl. ¶ 23. The Parties negotiated and reached agreement regarding fees, costs and expenses only after agreeing on all material terms of the Settlement. Decl. ¶ 23. Such award is subject to this Court's approval and will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims for the Settlement Class.

## III. ARGUMENT

### A. The Legal Standard for Preliminary Approval.

Courts, including the Second Circuit, emphasize the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.' The court first must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Hill v. City of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2020 U.S. Dist. LEXIS 168099, at *2-3 (N.D.N.Y. Sep. 15, 2020).

At the final approval stage, the following factors will likely weigh in favor of granting final approval in determining whether the settlement agreement is fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
　　(i) the costs, risks, and delay of trial and appeal;
　　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
　　(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
　　(iv) any agreement required to be identified under Rule 23(e)(3); [3] and
(D) the proposal treats class members equitably relative to each other.

---

[3] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

Fed. R. Civ. P. 23(e)(2). A proposed settlement of a class action should be preliminarily approved where an "agreement achieved through good-faith, non-collusive negotiation." *Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000). To decide a class settlement is fair, courts must examine its procedural and substantive fairness. *Kirby v. FIC Rest., Inc.*, No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 178109, at *4 (N.D.N.Y. Sep. 28, 2020).

> **B.   This Settlement Satisfies the Criteria for Preliminary Approval.**

The relevant factors weigh in favor of Preliminary Approval. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe their claims are meritorious and would prevail if they proceeded to trial. Community Bank argues Plaintiffs' claims are unfounded, denies any potential liability as well as Plaintiffs' ability to certify a class, and up to the point of settlement indicated a willingness to litigate those claims vigorously. Given the risks, uncertainties, and litigation burdens, Community Bank agreed to the Settlement terms.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Decl. ¶ 24.

> **1.   This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations.**

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. *Id.* ¶ 25. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after there has

been discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. The mediator's participation demonstrates arm's length negotiations occurred.

Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Decl. ¶¶ 5, 8. In negotiating this Settlement, Class Counsel benefited from years of experience and familiarity with the facts of this case as well as with other cases involving similar claims. *Id.* Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and engaged in briefing on Community Bank's motion to dismiss and the motion to amend. *Id.* ¶¶ 6, 10-12. They engaged in discovery and significant data and damage analysis. *Id.* ¶¶ 14, 24. Class Counsel was also well-positioned to evaluate Plaintiffs' claims strengths and weaknesses, and the appropriate basis upon which to settle them, by litigating similar claims in courts across the country. *Id.* ¶ 20.

### 2. The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable.

A preliminary review of the Settlement supports preliminarily approval under Rule 23(e)(2), as amended effective December 1, 2018, and Second Circuit case law. As explained in further detail below, this Settlement meets all of the factors set forth in Rule 23(e)(2).

The Second Circuit has identified nine factors (the Grinnell factors) that should be considered in determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). While the Grinnell factors are routinely considered in connection with final approval of class action settlements, the Grinnell factors are considered a "useful guide" at the preliminary approval stage as well. *Am. Medical Ass'n v. United Healthcare Corp.*, 00 Civ. 2800 (LMM), 2009 U.S. Dist. LEXIS 45610, at *18-19 (S.D.N.Y. May 19, 2009). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider

the totality of these factors in light of the particular circumstances.'" *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 U.S. Dist. LEXIS 79043, at *11 (N.D.N.Y. June 17, 2016). Here, the *Grinnell* factors weigh heavily in favor of Preliminary Approval.[4] These factors remain applicable even after the amendment of Rule 23(e):

> The Court understands the new Rule 23(e) factors to add to, rather than displace, the Grinnell factors. See id. ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Indeed, there is significant overlap between the Grinnell factors and the Rule 23(e)(2) (C—D) factors, as they both guide a court's substantive, as opposed to procedural, analysis. Accordingly, the Court considers both sets of factors below in its analysis of whether the Court will likely find that the proposed settlement is fair, reasonable, and adequate, and grant final approval.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

### a. The Risks of Establishing Liability and Damages Demonstrate That This Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery

Courts typically analyze the final two Grinnell factors together, the range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 U.S. Dist. LEXIS 146280, at *22 (N.D.N.Y. Aug. 13, 2020); *See e.g. Marroquin Alas*, No. 2016 U.S. Dist. LEXIS 79043, at *14; *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *16 (N.D.N.Y. Jan. 28, 2019). The Court need only determine if the settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Plaintiffs and Class Counsel are confident in the strength of their case, but they are also pragmatic in their awareness of the various defenses available to Community Bank, and the risks

---

[4] The sole *Grinnell* factor which does not favor settlement is the ability of the defendant to withstand a larger settlement; however, "this factor, standing alone, does not suggest that the settlement is unfair." *Baudin*, LLC, 2020 U.S. Dist. LEXIS 146280, at *22 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

inherent to litigation and establishing both liability and damages. This is a crucial factor favoring settlement, as Courts routinely approve settlements where a plaintiff would have faced significant legal and factual obstacles to establishing liability. *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815 (DJS), 2019 U.S. Dist. LEXIS 13529, at *14 (N.D.N.Y. Jan. 28, 2019). Indeed, "[l]itigation inherently involves risks." *Id.* The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of [Plaintiff's] case." *Baudin*, 2020 U.S. Dist. LEXIS 146280, at *23.[5]

The dispute centers on Community Bank's allegedly unfair and misleading assessment of APPSN Fees and Account Verification Fees. With this Settlement, Plaintiffs have achieved their desired goal of compensating class members charged such fees during the Class Period. While Plaintiffs' best-case scenario is a 100% refund of the APPSN Fees and Account Verification Fees, there was a substantial risk that Plaintiffs would not achieve such a result. Prior to Settlement, Community Bank sought dismissal. Although that was denied, success on the merits in not certain. Community Bank contends that the relevant Account agreements are unambiguous, and even if they were, the extrinsic evidence resolves the ambiguity in its favor on the whether the fees at issue are permitted. Thus, although Plaintiffs believe they have a strong chance on the merits, Plaintiffs might not certify the classes or would lose at summary judgment or trial, or on appeal. Decl. ¶ 26.

the Value of the Settlement represents approximately 39% of the APPSN Fees and Account Verification Fees allegedly wrongly charged to the Settlement Class, without the inherent litigation risks, is a very fair and reasonable recovery. The Settlement Fund alone is 32% of the probable damages. Indeed, it is a very good result comparing the results in other overdraft cases. Decl. ¶ 20.

This Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See, e.g., Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198

---

[5] *See also In re Global Crossing*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-13 (S.D.N.Y. Sept. 29, 2003) (few jury trials result in full amount of damages claimed).

(S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 34% of the most likely recoverable damages for class members); *Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) (approving $62,000,000 settlement for 42% of the most probable damages and praising it as an "outstanding result").

The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context her motion for class certification and at trial, as they have in other similar cases. The legal issues raised in this case have not been decided in the cases in which plaintiffs have sued financial institutions for assessing fees based on the specific contractual language.

Each of these risks, by itself, could easily have impeded Plaintiff's and the Settlement Class's success at trial. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that Settlement outweighs the gamble of continued litigation. Decl. ¶¶ 26-27. Moreover, even if they prevailed at summary judgment and trial, any recovery could be delayed for years by appeals. "Settlement eliminates the risk, expense, and delay inherent in this process." *Cruz*, 2019 U.S. Dist. LEXIS 13529, at *15. The Settlement provides substantial relief without further delay. Decl. ¶ 32.

Further, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through a full-day mediation session and additional negotiation thereafter. As a result, the Parties have

reached a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. The $3,460,833.02 Value of the Settlement is fair and reasonable in light of Community Bank's defenses, and the challenging and unpredictable litigation path in the absence of settlement. *Id.* ¶ 20.

### b. The Expense, Complexity, and Likely Duration of Further Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual Settlement Class members, is impracticable. Indeed, the complexity, expense, and likely duration of litigation is a critical factor in evaluating a class settlement's reasonableness. *Charron v. Weiner*, 731 F.3d 241, 247 (2d Cir. 2013). Settlements are favored in class actions, which "are generally complex" and "consume tremendous time and financial resources." *Kirby*, 2020 U.S. Dist. LEXIS 178109, at *6.

Recovery by any means other than Settlement would require additional years of litigation here and in the Second Circuit. Delay, at the trial stage, and through post-trial motions and the appellate process, could force the Class to wait even longer for any recovery, further reducing its value.[6]

Approving the Settlement will mean an immediate recovery for Settlement Class Members. While Plaintiffs believe that the Action has merit and that the class ultimately would prevail at trial, continued litigation would last for an extended period of time before any judgment might be entered. The risk of obtaining class certification and maintaining it through trial is also present. *Hanifin v. Accurate Inventory & Calculating Serv.*, 2014 U.S. Dist. LEXIS 115710, at *13 (N.D.N.Y. Aug. 20, 2014). The Parties would also have to first litigate a motion for class certification. See e.g. *Parkis v. Microsoft Corp.*, No. 5:09-CV-110 (FJS/GHL), 2009 U.S. Dist. LEXIS 47880, at *2 (N.D.N.Y. June 4, 2009).

Settling now with the benefit of the analysis of Settlement Class membership provides

---

[6] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

immediate and substantial benefits to tens of thousands of customers, avoiding significant costs and risks of continuing litigation, including considerable fees incurred by experts. This consideration militates heavily in favor of the Settlement as "[the settlement of complex class action litigation is favored by the courts." *Cavalieri v. GE*, No. 06cv315 (GLS/DRH), 2009 U.S. Dist. LEXIS 68693, at *4 (N.D.N.Y. Aug. 5, 2009). Settling now on such favorable terms is, therefore, in the Settlement Class's best interests. *See Oneida Indian Nation v. Cty. of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000).

Therefore, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner.

### c.   The Risk of Maintaining Class Action Status Throughout Trial

Whether the Action would have been tried as a class action is also relevant in assessing fairness. *See Hill*, 2020 U.S. Dist. LEXIS 168099, at *10 ("Whether the case would be manageable as a class action at trial is not of consequence here . . . as '[t]he court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.'"). As the Court had not yet certified a class when the Agreement was signed, it is unclear whether certification would have been granted. The difficulty of class certification favors approving the Settlement. *See id. See also Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *11 (S.D.N.Y. Aug. 6, 2010) ("no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time").

Given Community Bank's defense of this Action to date, Community Bank would have vigorously opposed Plaintiffs' certification motion, and may have appealed if unsuccessful. It would have argued class certification is not appropriate on the grounds of typicality, adequacy, predominance, commonality, and numerosity. Success on any one of these grounds could have prevented the maintenance of a class through trial. Further, this litigation activity would have required the Parties to expend significant resources. Decl. ¶ 26. Accordingly, this factor favors Preliminary Approval.

### d.   The Extent of Discovery Completed and the Stage of the Proceedings

This *Grinnell* factor requires that the parties have "engag[ed]in thorough investigation and discovery," enough to recommend settlement to the Court. *Cruz*, 2019 U.S. Dist. LEXIS 13529, at

*11. This factor is relevant to the parties' knowledge of the strengths and weaknesses of the various claims which affects the determination of the settlement's fairness." *Id.* at *10 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery"). Here, Class Counsel devoted substantial time and resources investigating, litigating, and resolving this case. Plaintiffs settled the Action with the benefit of Class Counsel's years of experience litigating cases like this one, discovery, and data and damage analysis. Decl. ¶ 8. Due to their extensive experience, the Parties' counsel is well aware of the relative strengths and weaknesses of their respective cases, informing the negotiations between counsel. Class Counsel's analysis allowed them to confidently evaluate Plaintiffs' claims' strengths and weaknesses, the prospects for success at class certification and trial, and the merits of claims and defenses, the risks attendant to continued litigation, and the benefits of settling.

The record provides sufficient information for this Court to determine that the Settlement is fair. Class Counsel have shown their willingness to litigate this action and their past experience shows that they will zealously represent their clients. *Id.* ¶¶ 5, 27. The litigation has been hard-fought as the Parties have engaged in motion practice and discovery, and extensive data and damage analysis. Accordingly, this factor also weighs in favor of preliminary approval.

In sum, Plaintiffs' recovery for the Settlement Class is a very good result given the litigation's complexity and the significant barriers that would loom absent settlement, including motions for class certification and summary judgment, trial, and appeals. Based on the Parties' data analysis, they estimate that the Settlement Class's most likely recoverable damages at trial would have been $8,865,226.00, affording a recovery of approximately 39% of the most probable damages, respectively, without further risks attendant to litigation. *Id.* ¶ 29. "The settlement agreement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of hypothetically larger amount[s] years down the road . . . ." *Cruz,* 2019 U.S. Dist. LEXIS 13529, at *16.

e. **The Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members**

Consideration under the Rule 23(e)(2) factor, which asks whether Class members are treated

equally relative to each other, also favors approval. Consideration here "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Because the Settlement distributes proceeds on a pro rata basis, Settlement Class Members will be treated equitably. *Baudin*, 2020 U.S. Dist. LEXIS 146280, at \*26 ("[F]inding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund").

Further, the release's scope applies uniformly to Settlement Class Members and does not affect apportionment of the relief to Settlement Class Members. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47. The Parties explicitly agree that the Class Release from the Settlement Class Members (other than Plaintiffs) is not a general release of claims against Community Bank. (Agreement ¶¶ 78-81.) Rather, it is tailored to the Released Claims as defined in the Agreement. *Id.* Accordingly, this Court should find this factor will likely weigh in favor of Final Approval.

### f.  The Terms of Any Proposed Award of Attorneys' Fees

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Decl. ¶ 23. Under the Agreement, Class Counsel are entitled to request, and Community Bank will not oppose, attorneys' fees of up to 33.33% of the Value of the Settlement, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement at ¶ 76(a). The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. *Id.* Such award is subject to this Court's approval and will compensate for the time, risk, and expenses incurred pursuing claims for Settlement Class members. Accordingly, this Court should find that this factor will favor granting final approval and should reserve its full analysis for the final approval stage. *See Kirby v. FIC Restaurants, Inc.*, No. 5:19-CV-1306 (FJS/ML), 2020 U.S. Dist. LEXIS 93037, at \*14-15 (N.D.N.Y. May 28, 2020).

### C.  Certification of the Settlement Class Is Appropriate.

For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement

Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Further, applying the December 2018 amendments to Rule 23(e)(1), the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the Settlement Class to inform them of the existence and terms of the proposed Settlement; of their right to be heard on its fairness; of their right to opt-out; and of the date, time, and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For purposes of this Settlement only, Community Bank does not oppose class certification. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class; and (4) the representative parties will fairly and adequately protect the interests of the Settlement Class. Rule 23(b)(3) certification is appropriate if questions of law or fact common to the class members predominate over individual issues of law or fact, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Numerosity. Numerosity is satisfied because the Settlement Class consists of tens of thousands of Community Bank customers, and joinder of all such persons is impracticable. Decl. ¶34. See Fed. R. Civ. P. 23(a)(1). A plaintiff does not need show that joinder is impossible, and "need not show the exact number" of class members. *Hill v. County of Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2017 U.S. Dist. LEXIS 221081, at *16-17 (N.D.N.Y. Sep. 29, 2017).

Commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). This "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Hill*, 2020 U.S. Dist. LEXIS 168099, at *5. Further, even a single common legal or factual question will suffice. *Hill v. County of Montgomery*, No. 9:14-cv-00933 (BKS/DJS), 2018 U.S. Dist. LEXIS 140305, at *36 (N.D.N.Y. Aug. 20, 2018). Here, commonality is readily satisfied. There are multiple questions of law and fact – centering on the alleged systematic practice of assessing fees – that are common to the Settlement Class, alleged to have injured all Settlement Class members in the same way, and would generate common answers central to the claims' viability were the Action to be tried. Decl. ¶ 35.

Typicality. For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent Settlement Class members, satisfying Rule 23(a)(3)'s typicality requirement. Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).[7] Claims of all members of a purported class need not be identical. Plaintiffs are typical of absent Settlement Class members because they were subjected to the same Community Bank practices leading to the assessment of fees and suffered from the same injuries and will benefit equally from the relief provided by the Settlement. Decl. ¶ 37.

Adequacy. Plaintiffs and Class Counsel satisfy Rule 23(a)(4)'s adequacy of representation requirement, which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. The analysis of whether a class representative

---

[7] Commonality and typicality tend to merge, as "[t]he crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Weber v. Align Tech., Inc.*, No. 5:07-CV-0535 (GTS/ATB), 2010 U.S. Dist. LEXIS 54187, at *13 (N.D.N.Y. June 2, 2010). Further, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Hill*, 2017 U.S. Dist. LEXIS 221081, at *22.

is adequate "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Plaintiff's interests are coextensive with, not antagonistic to, the Settlement Class's interests because Plaintiffs and the absent Settlement Class members have the same interests in the relief afforded by the Settlement, and absent Settlement Class members have no diverging interests. Decl. ¶ 38. Further, Plaintiffs are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including similar consumer actions. *Id.* ¶¶ 5, 8. Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.* ¶ 33.

Predominance. Certification of the Settlement Class is further appropriate because the questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3). For purposes of satisfying Rule 23(b)(3), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). This is readily satisfied because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. Decl. ¶ 36 For example, each Settlement Class member's relationship with Community Bank arises from Account agreements that are the same or substantially similar in all relevant respects to the other Settlement Class members' agreements, and the fees at issue were charged based on the same set of circumstances alleged to be in breach of the Class Members' form agreements. *Id.* ¶ 35.

Superiority. Further, resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### D. The Proposed Notice Program Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.*, § 21.312 (internal quotation marks omitted). The best practicable notice is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311. Settlement notices under Rule 23 satisfy due process when they

> adequately advises members of the Settlement Classes of their rights under the Settlement, and meets the requirements of due process. The Settlement Notices fairly, plainly, accurately, and reasonably provide Settlement Class members with all required information, including (among other things): (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Classes; (3) a description of the material terms of the Settlement; (4) instructions as to how Settlement Class members may make a claim; (5) a disclosure of the release of claims should they choose to remain in the class; (6) an explanation of Settlement Class members' opt-out rights, a date by which Settlement Class members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (8) the date, time, and location of the final [*9] approval hearing; (9) the internet address for the settlement website and the toll-free number from which Settlement Class members may obtain additional information about the Settlement; and (10) the names of the law firms representing the Settlement Classes, contact information for the lead firms, and information regarding how Class Counsel and the named Class Representatives will be compensated.

*Skinner v. Citibank*, N.A., No. 5:12-cv-820 (DNH/DEP), 2014 U.S. Dist. LEXIS 184349, at *8-9 (N.D.N.Y. Apr. 2, 2014). The proposed Notice Program satisfies these content requirements. It is designed to reach a high percentage of the Settlement Class by sending Email Notice or Postcard Notice to Settlement Class members and exceeds the requirements of constitutional due process. Decl. ¶ 21. Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1 and 2.

### E.    Notice Pursuant to the Class Action Fairness Act (CAFA)

CAFA requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). The

Settlement Administrator, on behalf of Community Bank, will serve CAFA Notice within the proper period required, along with a CD containing the documents described in Section 1715(b).

### F.      Plaintiff's Counsel Should Be Appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to represent the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As detailed above, Class Counsel diligently investigated and litigated Plaintiffs' claims and the feasibility of class certification, and have and will continue to devote substantial time and resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including many banking fee cases. As such, Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class members' claims and class certification. See Decl., Ex. 1 and 2. Accordingly, the Court should appoint Plaintiffs' counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(a) and 23(b)(3); (3) appoint Plaintiffs as Class Representatives; (4) approve the Notice Program and approve the form and content of the Notices attached to the Agreement as Exhibits 1 and 2; (5) approve and order the opt-out and objection procedures in the Agreement; (6) stay the Action against Community Bank pending Final Approval of the Settlement; (7) appoint Jeff Ostrow and Jonathan Streisfeld of Kopelowitz Ostrow P.A. and Jeffrey Kaliel and Sophia Gold of Kaliel PLLC as Class Counsel; and (8) schedule a Final Approval Hearing no sooner than the week of  June 14, 2021 (if convenient for the Court). For the Court's convenience, Plaintiffs attach hereto as **Exhibit C**, a Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class and setting forth the various deadlines referenced herein and outlined in the Agreement.

DATED:  January 14, 2021

/s/ Jeff Ostrow
Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
**KOPELOWITZ OSTROW P.A.**
1 W Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey Kaliel, Esq. (pro hac vice)
Sophia Gold, Esq. (pro hac vice)
**KALIEL PLLC**
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009
Telephone: 202-350-4783
jakliel@kalielpllc.com
sgold@kalielpllc.com

James R. Peluso, Esq. (105634)
**DREYER BOYAJIAN LLP**
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
jpeluso@dbls.com

*Counsel for Plaintiffs and the Settlement Classes*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 14, 2021, the foregoing was served by CM/ECF to all counsel of record.

Respectfully submitted,

By: /s/ Jeff Ostrow
       Jeff Ostrow