**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**TINA THOMPSON and SCOTT DOXEY,** *on behalf*
*Of themselves and all others similarly situated*,

                                        **Plaintiffs,**

        **vs.**                                              **8:19-CV-919**
                                                          **(MAD/CFH)**

**COMMUNITY BANK, N.A.,**

                                        **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**KOPELOWITZ OSTROW**                     **DANIEL TROPIN, ESQ.**
**FERGUSON WEISLBERG GILBERT**            **JONATHAN M. STREISFELD, I, ESQ.**
One West Las Olas Boulevard
Suite 500
Fort Lauderdale, Florida 33301
Attorneys for Plaintiff

**KOPELOWITZ, OSTROW LAW FIRM**          **JEFFREY M. OSTROW, ESQ.**
200 S. W. 1st Avenue, Suite 1200
Fort Lauderdale, Florida 33301
Attorneys for Plaintiff

**DREYER BOYAJIAN LLP**                   **JAMES R. PELUSO, JR., ESQ.**
75 Columbia Street
Albany, New York 12210
Attorneys for Plaintiff

**KALIEL PLLC**                           **JEFFREY D. KALIEL, ESQ.**
1100 15th Street NW – 4th Floor           **SOPHIA GOREN GOLD, ESQ.**
Washington, D.C. 20005
Attorneys for Plaintiff

**KATTEN, MUNCHIN LAW FIRM**              **STUART M. RICHTER, ESQ.**
2029 Century Park East                    **ANDREW J. DEMKO, ESQ.**
Suite 2600
Los Angeles, California 90067
Attorneys for Defendant

1

**BOND SCHOENECK & KING,**             **JONATHAN B. FELLOWS, ESQ.**
**PLLC – SYRACUSE**
One Lincoln Center
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On July 26, 2019, this Action[1] was filed against Defendant Community Bank, alleging multiple causes of action stemming from Community Bank's policy regarding certain Overdraft Fees.  *See* Dkt. No. 1.  On November 15, 2019, Defendant moved to dismiss the complaint.  Dkt. No. 35.  On December 15, 2019, a motion to amend the complaint was filed, adding Plaintiffs, Tina Thompson and Scott Doxey.  Dkt. No. 39.  On February 18, 2020, the Court granted in part and denied in part Plaintiff's motion to amend the complaint and granted in part and denied in part Defendant's motion to dismiss.  Former Plaintiff Charles Kelly's individual claims were dismissed and leave to amend was granted.  Dkt. No. 41.  On February 28, 2020, Plaintiffs Thompson and Doxey filed an Amended Complaint alleging breach of contract.  See Dkt. No. 42. The Parties also participated in formal discovery.  Thereafter, the Parties engaged in settlement discussions, including attending a mediation.  Further negotiations resulted in the Parties' Settlement Agreement.

On January 14, 2021, Plaintiffs filed a motion for Preliminary Approval.  *See* Dkt. No. 63. On May 10, 2021, the Court granted Preliminary Approval and directed that Notice be sent to Settlement Class members.  *See* Dkt. No. 65.  On August 25, 2021, the Court held a Final

---

[1] All capitalized terms herein have the same meaning as those terms defined in the Settlement Agreement.

Approval Hearing, during which it signaled its intent to approve the Settlement and requested attorneys' fees, costs, and Services Awards, and indicated that a written decision would follow.

As set forth below, the Court hereby grants Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees and Costs and Service Awards.

# I.     BACKGROUND

## A.     Factual Allegations

This Action seeks monetary damages, restitution, and declaratory relief due to Defendant's policy and practice of charging certain overdraft fees that allegedly violated the account agreement between Plaintiffs and Defendant.  *See* Dkt. No. 42 at ¶ 1.  Specifically, Plaintiffs allege that the overdraft fees charged pursuant to Authorize Positive, Purportedly Settle Negative ("APPSN") Transactions despite a sufficient available balance in a customer's account at the time the transaction was authorized, but an insufficient available balance at the time the transaction was presented to the Defendant for payment and posted to the customer's account, violated the account agreement.  *See id*. at ¶ 14.  This Action further claims that Defendant improperly assessed overdraft fees as a result of account verification processes that resulted in no change to the account balances.  *See* id. at ¶¶ 63-65.

## B.     Settlement Negotiations

The Court ordered the Parties to attend mediation.  Dkt. No. 46.  On October 14, 2020, the Parties mediated before Professor Eric D. Green, a nationally-renowned mediator with substantial experience mediating consumer banking related claims.  The mediation did not result in settlement, but after further negotiations, the Parties agreed to resolve the Action.

On January 14, 2021, Plaintiffs filed their Unopposed Motion for Preliminary Approval of

Class Action Settlement. *See* Dkt. No. 63. Plaintiffs requested, among other things, that the Court grant Preliminary Approval of the Settlement and certify the Settlement Class for the settlement purposed. *See id*. at ¶ 25. On May 6, 2021, the Court granted Preliminary Approval. *See* Dkt. No. 65.

**C.     CAFA Notice**

On January 15, 2021, the Settlement Administrator sent notice packets to federal authorities as required by the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1715(d). The 90-day CAFA Notice period concluded on April 15, 2021.

**D.     Summary of the Settlement Terms**

  ***1.   The Value of the Settlement***

The total Value of the Settlement is $3,460,833.02, consisting of a cash Settlement Fund of $2,850,000.00 and $610,833.02 in forgiven Uncollected Overdraft Fees. *See* Dkt. No. 63-2 at ¶ 52. Settlement Class Members Payments shall be distributed from the Net Settlement Fund. *See id.* at ¶ 51. Further, the Settlement Fund shall cover any Court approved attorneys' fees and costs awarded to Class Counsel, any Court approved Service Award to the Class Representatives, and the Settlement Administration Costs. *See id.* at ¶ 33.

  ***2.   Settlement Classes and Releases***

There are two classes in this Settlement:

APPSN Fee Class - Current or former customers of Defendant who were assessed APPSN Fees from January 1, 2015 to December 31, 2019.

Account Verification Fee Class - Current or former customers of Defendant who were assessed Account Verification Fees from January 1, 2015 to December 31, 2019.

*See id.* at ¶¶ 14, 19. All Settlement Class members who did not timely opt-out of the Settlement

will release Defendant from all claims that arise out of and relate to the facts and claims alleged in the Action. *See id.* at ¶¶ 78-81. In addition, Plaintiffs will provide a general release, including a release of unknown claims. *See id.*

### 3. *Allocation Formula*

Of the $2,850,000.00 cash in the Settlement Fund, $2,830,000.00 (99.3%) shall be allocated to the APPSN Fee Class and $20,000.00 (.7%) to the Account Verification Fee Class. *See id.* at ¶ 76(d). If applicable, Settlement Class Members may receive payments as members of the APPSN Fee Class and the Account Verification Fee Class. *Id.* Based on this allocation, Settlement Class Member Payments from the Net Settlement Fund shall be calculated as follows:

    i.      Settlement Class Members of the APPSN Fee Class shall be paid per incurred APPSN Fee calculated as follows: (0.993 of the Net Settlement Fund/Total APPSN Fees) x Total number of APPSN Fees charged to and paid by each APPSN Fee Class member; and

    ii.     Settlement Class Members of the Account Verification Fee Class shall be paid per incurred Account Verification Fee calculated as follows: (0.007 of the Net Settlement Fund/Total Account Verification Fees) x Total number of Account Verification Fees charged to and paid by each Account Verification Fee Class member.

*Id.* All Settlement Class Members who are Current Account Holders at the time of distribution will be paid by direct deposit into their Accounts. *See id.* Settlement Class Members who are Past Account Holders at the time of the distribution shall be sent a check by the Settlement Administrator at the address used to provide the Notice, or at such other address as designated by the Settlement Class Member. *See id.* No portion of the Settlement Fund will revert to Defendant. *See id.*

5

### 4. *Attorneys' Fees and Costs*

Class Counsel have requested an award of attorneys' fees in the amount of $1,153,610.00, which constitutes 33.33% of the Value of the Settlement.  Additionally, Class Counsel have requested reimbursement of $12,992.70 in costs incurred to be paid from the Settlement Fund.

### 5. *Settlement Administration*

To facilitate the logistics of executing this Settlement, the Parties agreed to the appointment of Epiq Class Action and Claims Solutions, Inc to serve as the Settlement Administrator.  The Settlement Administrator shall receive up to $81,371.00 in fees and costs from the Settlement Fund.

The Notice advised Settlement Class members of their right to object or opt-out of the Settlement and explained how to do so.  There have been zero objections, and only two Settlement Class members have opted-out of the Settlement.  *See* attached *Exhibit A*.

Prior to distributing Notice to the Settlement Class members, the Settlement Administrator established a website, *www.CommunityOverdraftSettlement.com*, as well as a toll-free line that Settlement Class members could access or call for any questions or additional information about the proposed Settlement, including the Long Form Notice.  Once Settlement Class members were identified via Defendant's business records, the Notices attached to the Agreement and approved by the Court were sent to each Settlement Class member.  For Current Account Holders who have elected to receive bank communications via email, Email Notice was delivered.  To Past Defendant Account Holders, and Current Account Holders who have not elected to receive communications by email or for whom the Defendant does not have a valid email address, Postcard Notice was delivered by U.S. Mail.

The Settlement Administrator mailed 36,012 Postcard Notices and sent 16,834 Email

Notices to the Settlement Class, and as a result of the Notice Program, 95% of the Settlement

Class received Notice of the Settlement.

## II.      DISCUSSION

### A.      Class Certification

#### 1.  *Rule 23*

"Before approving a class settlement agreement, a district court must first determine

whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  *In re*

*Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012).  "Confronted with a

request for settlement-only class certification, a district court need not inquire whether the case, if

tried, would present intractable management problems" precluding findings of predominance

under Rule 23(b)(3).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re*

*AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a

settlement class").  "But other specifications of the Rule — those designed to protect absentees by

blocking unwarranted or overbroad class definitions — demand undiluted, even heightened,

attention in the settlement context."  *Amchem*, 521 U.S. at 620.

On May 6, 2021, the Court preliminarily certified the Settlement Class.  *See* Dkt. No. 65.

Plaintiffs now request that the Court certify the Settlement Class (consisting of the APPSN Fee

Class and the Account Verification Fee Class) for purposes of effectuating the Settlement.

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is

impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as

relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to grant certification." *Story v. SEFCU,* No. 1:18CV764, 2021 WL 736962, *1 (N.D.N.Y. Feb. 25, 2021) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 2. Numerosity

It is apparent that the proposed class satisfies the numerosity requirement. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As such, numerosity here is easily satisfied because there are approximately 46,404 Settlement Class members.

### 3. Commonality

The proposed Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). Courts construe the commonality requirement liberally. *See id.*

Here, the case involves numerous common issues. Plaintiffs and Settlement Class members all bring identical claims, i.e., that Defendant improperly charged Relevant Overdraft Fees in violation of the Account agreements. Courts have found such allegations sufficient to

satisfy the commonality requirement.  *See Story,* 2021 WL 736962, at *5 (citing *Pantelyat v. Bank of America, N.A.*, No. 16-CV-8964, 2019 WL 402854, *2 (S.D.N.Y. Jan. 31, 2019)).

### 4.   *Typicality*

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story,* 2021 WL 736962, at *5-6 (quoting *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)).  The requirement is met if the (1) "claims of representative plaintiffs arise from same course of conduct that gives rise to claims of the other class members," (2) "where the claims are based on the same legal theory," and (3) "where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." *Id.*  (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Settlement Class members' claims.  Plaintiffs and the Settlement Class members entered into the same types of Account agreements and were allegedly assessed the same Relevant Overdraft Fees in violation of those contracts.  Additionally, the claimed injuries arise from the same course of conduct for both the Settlement Class members and Plaintiffs.  As such, Plaintiffs have satisfied the typicality requirement.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012); *Frank*, 228 F.R.D. at 182.

### 5.   *Adequacy of the Named Plaintiffs and Class Counsel*

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's

interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of other class members.'" *Story,* 2021 WL 736962, at *6 (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

In the present matter, there is no evidence that the interests of Plaintiffs and the Settlement Class members are at odds. Rather, the record reflects that Plaintiffs, and the Settlement Class members have the same incentive to maximize their compensation for past harm.

Additionally, Class Counsel in this Action have established that they are qualified, experienced, and able to conduct the litigation of this Action. Class Counsel is experienced in handling class actions, complex litigation, and claims stemming from assessment of Overdraft Fees. As such, the Court finds that Class Counsel also meets the Rule 23(a)(4) requirements for adequate representation.

### 6. Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, again, Plaintiffs have satisfied the requirements of Rule 23(b)(3).  As discussed, common questions of law and fact predominate over any questions that might affect the individual Plaintiffs.  Further, a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class member is otherwise entitled.  Additionally, litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class members, particularly those who lack the resources to bring their claims individually.  Accordingly, the Court grants Plaintiffs' motion insofar as it seeks class certification for settlement purposes.

## B.      Fairness of the Proposed Settlement

### 1.    Standard of Review

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also Story,* 2021 WL 736962, at *7.  Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate" after considering the following:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Second Circuit also analyze proposed class-action settlements under the framework set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), in tandem with Rule 23 to determine whether a class settlement is substantively fair and warrants final approval. *See Story,* 2021 WL 736962, at *8 (citing *Grinnell*, 495 F.2d at 463). The Grinnell factors include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

### 2. *The Settlement is Procedurally Fair*

Rules 23(e)(2)(A)-(B) "constitute the procedural analysis" of the fairness inquiry. *Story,* 2021 WL 736962, at *7. "A strong initial presumption of fairness attaches to a proposed

settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Id.* (quoting *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192, 2019 WL 6889901, *6 (S.D.N.Y. Dec. 18, 2019)).  This presumption of fairness and adequacy applies here.

Based on the submissions before the Court and as discussed at the Final Approval Hearing, the Settlement was reached through arm's-length negotiations, with a well-regarded mediator's assistance, and after experienced counsel had evaluated the merits of Plaintiffs' claims. Plaintiffs' counsel conducted a thorough investigation, engaged in formal discovery which involved Defendant producing more than a thousand pages of documents as well as transactional data, and engaged a data expert to analyze Community Bank's data to determine whether a class could be ascertained and to support Plaintiffs' future motion for class certification.  Class Counsel also participated in extensive settlement negotiations with Defendant.  The final terms of the Settlement were memorialized in a comprehensive Agreement.  *See* Dkt. No. 63-2.  These arm's-length negotiations raise a presumption that the Settlement meets the requirements of due process. *See Story*, 2021 WL 736962, at *7.  Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3. *The Settlement is Substantively Fair*

#### a. *The Complexity, Expense, and Likely Duration of Litigation*

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  This case, had it not settled, would have been all three. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *Id.* at 8 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).  This case is no exception, with

approximately 46,404 Settlement Class members.  Additionally, settlement of this matter avoided the delay that necessarily would have followed motion practice and the time needed for the Court to act on those motions.  After all that, a lengthy and complex trial would be required, that would consume tremendous time and resources for all Parties and the Court.  Therefore, the first *Grinnell* factor weighs heavily in favor of Final Approval.

### b.   The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Story*, 2021 WL 736962, at *8 (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *Id.* There are only two Settlement Class members that opted-out of the Settlement and there have been no objections.  As such, this factor favors Final Approval. *See id.* (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).  The Settlement Class members who are not bound by the Settlement are identified in attached *Exhibit A*.

### c.   The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus [] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Story*, 2021 WL 736962, at *8 (quoting *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2015 WL 10847814, *7 (S.D.N.Y. Sept. 9, 2015)).  The Parties' discovery meets this standard.  They exchanged more than a thousand pages of documents as well as a separate production of transactional data, which as discussed above, was analyzed by the Parties' experts.  Therefore, this factor favors Final

Approval.

### d. *Risk of Establishing Liability and Damages and Maintaining Class Action*

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the Settlement.  In assessing the fourth, fifth, and sixth factors, which are often considered together, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to 'foresee with absolute certainty the outcome of the case.'"  *Story*, 2021 WL 736962, at *8-9 (quoting *Fleisher,* 2015 WL 10847814, at *8). "'[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'"  *Id.* (quoting *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).  "In assessing the risks, courts recognize that 'the complexity of Plaintiff's claims ipso facto creates uncertainty.'"  *Id.* (quoting *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009)).

Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against Defendant, they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal.  A trial on the merits would involve risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to prove that they and the Settlement Class were charged Overdraft Fees and that the assessment of those fees was in violation of their Account agreements.  Plaintiffs would risk a trier of fact reaching the conclusion that the language of the agreement, and other related disclosure documents, permits Defendant to assess Relevant Overdraft Fees in the manner that it did.

Additionally, there is risk and additional expense associated with obtaining class certification and maintaining both conditional and class certification through trial.  The Court has

not certified a Rule 23 class, and such a determination would only be reached after further discovery and exhaustive briefing by the Parties. Even if the Court granted certification, there is always the risk of decertification after the close of discovery. *See Story*, 2021 WL 736962, at *9; *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting the defendant's motion to decertify collective action). Risk, expense, and delay permeate such processes. As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting Final Approval.

### e. Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses a defendant's ability to withstand a greater judgment. Even assuming that it could withstand a greater judgment, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted). Indeed, "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Story*, 2021 WL 736962, at *9 (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006)). Here, this factor is, at best, neutral, and "does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86 (citations omitted).

### f. Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also strongly support approval of the settlement. *Grinnell*, 495 F.2d at 463. Courts typically analyze the final two *Grinnell* factors together. *See Global Crossing*, 225 F.R.D. at 460. In analyzing these two factors, a reviewing court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is

reasonable." *Grinnell*, 495 F.2d at 462.  "The determination of whether a settlement amount is reasonable 'does not involve the use of a mathematical equation yielding a particularized sum.'" *Story*, 2021 WL 736962 at *9 (quoting *Frank*, 228 F.R.D. at 186).  Rather, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119.  Moreover, the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Story*, 2021 WL 736962, at *9 (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)).  The overall Value of the Settlement comprises monetary as well as non-monetary relief (Account disclosure changes).  *See id.*; *Velez v. Novartis Pharm. Corp.*, No. 04- CV-09194, 2010 WL 4877852, *18 (S.D.N.Y. Nov. 30, 2010) (holding that both the monetary and non-monetary relief must be considered in calculating value of a settlement).

In the present matter, the Value of the Settlement is $3,460,833.02 and represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame a motion to decertify any class, succeeded on all claims at trial, and survived an appeal with their judgment intact.

By Class Counsel's estimation, the Value of the Settlement represents approximately 39% of Defendant's potential damages exposure of $8,865,226.0, assuming Plaintiffs were to prevail on all of their claims.  Even if the Court were to look only to the $2,850,000.00 of Settlement Fund, this still represents approximately 32% of the total damages at issue.  The Settlement represents a substantial recovery for Settlement Class Members, particularly in light of the risks of litigation.

The Settlement Class Members will receive a pro rata payment based a percentage of the Net Settlement Fund multiplied by the total amount of Overdraft Fees assessed.  *See* Dkt. No. 63-2 at ¶ 76(d).  The amounts of the Settlement Class Member Payments and forgiveness of Uncollected Overdraft Fees will depend on the class or classes to which each Settlement Class Member belongs.  *See id.*  Weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the Value of the Settlement is reasonable.

### g.  *Rule 23(e)(2)(C)-(D)*

Rule 23 also requires the Court to consider whether the relief provided for the Settlement Class is adequate and whether the proposed Settlement treats Settlement Class Members equitably relative to each other.  As discussed above, the record demonstrates that the Settlement provides adequate relief to Settlement Class Members by avoiding the cost and risk of further litigation and the Parties have proposed an effective method for processing and allocating Settlement Class Members' claims.  The Agreement calls for automatic payments to Settlement Class Members and automatic forgiveness of Uncollected Overdraft Fees.

The Agreement's allocation plan calls for Settlement Class Members to receive a pro rata share of the Net Settlement Fund based upon the amount of Relevant Overdraft Fees they incurred.  *See id.*  It also provides for forgiveness of Uncollected Overdraft Fees to those eligible for such relief.  The Court finds that this allocation is reasonable and treats all Settlement Class Members in an equitable manner.  *See Story*, 2021 WL 736962, at *10; *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, *7 (E.D.N.Y. Oct. 23, 2012) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel") (quotation omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-

2631, 2019 WL 5257534, *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund).

Finally, as will be discussed in more detail below, Plaintiffs' proposed award of attorneys' fees is reasonable and the Parties filed the Agreement required by Rule 23(e)(3), including the attorneys' fees awarded pursuant to the Settlement, on the docket. *See* 5 William B. Rubenstein, Newberg on Class Actions § 15:12 (5th ed. 2018).

## C.   Service Award

The named Plaintiffs seek Service Awards of $5,000.00 each for serving as Class Representatives.  Class Counsel argue that these Service Awards are appropriate and reasonable in light of the substantial and meaningful work that Plaintiffs have contributed.

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'"  *Story*, 2021 WL 736962, at *11 (quoting *Hall v. ProSource Technologies, LLC*, No. 14-CV-2502, 2016 WL 1555128, *9 (E.D.N.Y. Apr. 11, 2016).  A Service Award of $5,000.00 for each Class Representative is reasonable and within the range of awards granted in this Circuit. *See id.*  (awarding the named plaintiffs service awards of $15,000)).  Therefore, the Court approves a $5,000.00 Service Award for each of the Class Representatives.

## D.   Costs

Class Counsel request reimbursement of $12,992.70 in costs to be paid from the Settlement Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to

the representation' of those clients." *Story*, 2021 WL 736962 at *11 (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)).  Here, the Notice informed Settlement Class members that Class Counsel would seek reimbursement of expenses. *See* Dkt. No. 63-2, Ex. 2 ¶10.  The vast majority of the costs are attributable to expert expenses and were necessary for Plaintiffs' expert to review and verify the calculations performed by Community Bank's expert, which allowed Plaintiffs to be well-informed about the range of damages at issue in this matter prior to engaging in settlement discussions.  Accordingly, the Court awards costs in the amount of $12,992.70.

**E.       Settlement Administrator Costs**

Class Counsel also seeks payment to Epiq Class Action and Claims Solutions, Inc, which was selected to serve as the Settlement Administrator, to be paid out of the Settlement Fund. Notice of this selection and payment was provided to the Settlement Class and no objections were made.  The Court finds that this expense (estimated at $81,371.00) is in line with cases of a similar nature.  Accordingly, the Court grants Class Counsel's request, and Epiq shall be reimbursed for overseeing and implementing the Notice Program and administering the Settlement up to $81,371.00.

**F.       Attorney's Fees**

Class Counsel move for an award of attorneys' fees in the amount of $1,153,610.00, which constitutes a 33.33% of the Value of the Settlement.

*i.       Method of Calculating Attorneys' Fees*

"Attorneys who create a common fund from which members of a class are compensated are entitled to 'a reasonable fee — set by the court — to be taken from the fund.'" *Story*, 2021 WL 736962 at *11 (quoting *Goldberger*, 209 F.3d at 47).  Such a fee award directly depletes the

amount by which the class benefits.  Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court.  *See, e.g., Burger v. CPC Intern., Inc.*, 76 F.R.D. 183, 188 (S.D.N.Y. 1977).

The Second Circuit has sanctioned two methods — the percentage method and lodestar method — for calculating reasonable attorneys' fees in class actions.  *See Goldberger*, 209 F.3d at 50.  The Court has discretion to award fees based on either the percentage method or the lodestar method.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this Action.  *See Story*, 2021 WL 736962 at *12 (citing *McDaniel*, 595 F.3d at 417); *WalMart*, 396 F.3d at 121.  The "percentage method," is the far simpler method by which the fee award is "some percentage of the fund created for the benefit of the class."  *Savoie*, 166 F.3d at 460 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).  In determining what percentage of the fee to award, courts consider the same factors used to gauge the appropriate multiplier for the lodestar.  *See Goldberger*, 209 F.3d at 47.  When utilizing the percentage method, courts often "crosscheck" the adequacy of the resulting fee by applying the lodestar method.  *See Goldberger*, 209 F.3d at 50.  Under use of either method, the touchstone of the inquiry is whether the award is reasonable.  *See id.*  A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy.  *See id.*

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar

magnitude and complexity as guidance.  *Story*, 2021 WL 736962, at *12.  Additionally, a sliding scale approach – awarding a smaller percentage of the settlement as the amount of the settlement fund increases – is appropriate in order to avoid overcompensating the plaintiffs' counsel to the detriment of the class members they represent.  *See id.* (citing *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014)) (other citation omitted).  Class Counsel contend that a fee of 33.33% of the Value of the Settlement to be payable from the Settlement Fund is reasonable and commonly awarded in cases of this nature. The Court finds that it is a reasonable baseline in the present matter.  *Baudin v. Res. Mktg. Corp., LLC,* No. 1:19CV386, 2020 WL 4732083, *13 (N.D.N.Y. Aug. 13, 2020) (awarding class counsels a 33% of the Settlement Fund); *see also Elliot v. Leatherstocking Corp.,* No. 3:10-CV-0934, 2012 WL 6024572, *7 (N.D.N.Y. Dec. 4, 2012) (citing *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 179 (E.D.N.Y. 2012) (awarding attorneys' fees of one-third of the settlement); *deMunecas v. Bold Food, LLC,* No. 09 CIV. 00440, 2010 WL 3322580, *9 (S.D.N.Y. Aug. 23, 2010) (awarding 33% of the settlement fund).  The Court also notes that the Plaintiff's Motion for Final Approval details the numerous cases in which Courts have awarded fees at or above 33.33%.

### b. *Counsel's Time and Labor*

Class Counsel spent significant effort to achieve the settlement.  During the formal litigation of this Action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  Class Counsel engaged in discovery, among other important pleading activities conducted research and drafted Plaintiffs' opposition to Defendant's motion to dismiss.  Finally, Class Counsel took part in mediation, and negotiated the terms of a favorable settlement for Plaintiffs.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry.  In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other cases involving overdraft fees across the country.

Upon completion of the Agreement, Plaintiffs carefully drafted and filed their motion for Preliminary Approval.  *See* Dkt. No. 63.  After Preliminary Approval was granted, Class Counsel actively worked and communicated with the Settlement Administrator to ensure that the Notice Program was carried out efficiently and correctly.  Further, Class Counsel spent hours preparing the Motion for Final Approval, which included the filing of additional declarations, and preparing for and attending the Final Approval Hearing.  Further, there will be significant post-Final Approval work ensuring that the Settlement benefits are properly distributed to Settlement Class Members, responding to Settlement Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed.

In performing these and other tasks, Class Counsel contends that their total hours of attorney, paralegal, and staff member time is 678.20, including an estimate of hours spent preparing for and attending the Final Approval Hearing, and future hours to assist the Settlement Administrator following Final Approval, which they claim represents an aggregate lodestar of approximately $447,783.30.  Considering the complexity of class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c.  *Complexity of the Case*

The magnitude and complexity of this case also supports the requested award.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of

other problems associated with them." *Story*, 2021 WL 736962, at *13 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174).  This case is no exception.  Plaintiffs' claims involved complicated banking activities and the analysis of voluminous data to determine which Account Holders are members of the Settlement Class.  *See* Dkt. No. 41.

### d.  Risk of Litigation

Class Counsel undertook risk in accepting the case on a contingency basis. *Story*, 2021 WL 736962, at *13.  In the face of the risk of no recovery, Class Counsel proceeded with the litigation and obtained a favorable outcome for the class.  Thus, Class Counsel certainly invested extensive time and costs with no guarantee of success.

### e.  Quality of the Representation

Class Counsel competently and efficiently represented Plaintiffs in prosecuting this Action. As such, this factor supports the requested award.

### f.  Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations.  *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014).  Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51.  "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *Story*, 2021 WL 736962, at *13.

Class Counsel obtained a favorable settlement in an efficient manner.  Additionally, as result of this litigation, Defendant has improved its disclosures of the challenged practices. Ultimately, Class Counsel's fee award is tied directly to the Value of the Settlement they created,

with no claims process to obtain the benefits of the Settlement.  No money will revert to the Defendant.

### g.  *Lodestar Cross-Check*

In assessing the reasonableness of a fee award, the Court may use the lodestar amount as a cross-check to the fees awarded under the percentage of the fund method.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013).  The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate."  *Goldberger*, 209 F.3d at 47 (citing *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).  The resulting lodestar may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation.  *See id.*

When the lodestar method is used as a cross-check, "the Court need not exhaustively scrutinize the hours documented by class counsel; instead, the reasonableness of the lodestar 'can be tested by the court's familiarity with the case.'" *Story*, 2021 WL 736962, at *113. (quoting *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548, 2012 WL 1320124, *13 (S.D.N.Y. Apr. 16, 2012)).  "Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *Id*.

Here, Class Counsel asserts that its combined lodestar is $447,783.30, resulting in a multiplier of about 2.576.  This multiplier is within the range of accepted multipliers for this Circuit.  *See Hanifin v. Accurate Inventory & Calculating Serv., Inc.,* No. 11 CIV. 1510, 2014 WL 4352060, *9 (N.D.N.Y. Aug. 20, 2014) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *see also Wal-Mart*, 396

25

F.3d at 123 (upholding multiplier of 3.5); *NECAIBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-CV-10783, 2016 WL 3369534, *1 (S.D.N.Y. May 2, 2016) (approving a multiplier of 3.9 on a $272 million settlement); *Woburn Ret. Sys. v. Salix Pharm.*, Ltd., No. 14-CV-8925, 2017 WL 3579892, *6 (S.D.N.Y. Aug. 18, 2017) (finding that a 3.14 multiplier was "within the range of reasonable … multipliers approved in this Circuit").

Accordingly, the Court finds that Class Counsel is entitled to $1,153,610.00 in reasonable attorneys' fees.

**G.    *Cy Pres* Distribution**

Pursuant to the Agreement, no money shall revert to Defendant. Instead, within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any remaining amounts resulting from uncashed checks shall be to the *cy pres* beneficiary that the Parties shall suggest, and the Court approves.

### III.    CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiffs' unopposed motion for certification of the Settlement Class, Final Approval of the class action Settlement, approval of Service Awards, and approval of attorneys' fees and costs is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 8, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

# **EXHIBIT A**

**EXCLUSION LIST**

1.  Earl A. Delles

2.  John Ray Leinbach